## ERIE R. CO. v. WEINSTEIN.

(Circuit Court of Appeals, Sixth Circuit. January 16, 1909.)

No. 1,834.

1. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS COVERED BY INSTRUCTIONS GIVEN.

An instruction that the law requires one approaching a railroad crossing to exercise his faculties of sight and hearing to avoid injury, and that ordinary care in approaching a situation so dangerous as a railroad crossing required that a person. at least look and listen at such short distance from the crossing as would enable him to escape injury, and whether he should do more—whether he should stop—depended on the circumstances of each case, which was for the jury to determine, sufficiently covered a request to charge that the looking required before going on a crossing should usually be just before going on the track, or so near thereto as to enable the person to cross before a train, within range of his view of the track, going at the usual speed of fast trains, would reach the crossing.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

2. RAILROADS (§ 324*)—CROSSING ACCIDENT—CARE REQUIRED.

A traveler, approaching a public railroad crossing, must exercise that caution usually exercised by prudent persons conscious of the danger. If the crossing is particularly dangerous, a corresponding increase of caution is required; the general rule being that a vigilant use of eye and ear is demanded.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1020–1025; Dec. Dig. § 324.*]

3. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

An objection to a detached portion of a charge is unsustainable, where it is removed by a consideration of the context.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

4. NEGLIGENCE (§ 85*)—CHILDREN—CARE REQUIRED—"ORDINARY CARE."

"Ordinary care," as applied to a child, is the kind of care which children of its age and intelligence are accustomed to exercise under the same or similar circumstances; and this though .he had arrived at the age when he should be chargeable with the care required of an adult as a matter of law.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 121–129; Dec. Dig. § 85.*

For other definitions, see Words and Phrases, vol. 6, pp. 5029–5042; vol. 8, pp. 7739, 7740.

Age as affecting contributory negligence, see note to Atchison, T. & S. F. Ry. Co. v. Hardy, 37 C. C. A. 362.]

5. TRIAL (§ 256*)—INSTRUCTIONS—SPECIFICNESS.

In the absence of a request for more specific instructions bearing on the experience and maturity of deceased, a boy of 14, an instruction referring to deceased as a boy, and directing the jury, in determining his contributory negligence, to consider his age, intelligence, experience, and surrounding situation, and charging that ordinary care as applied to him was the kind of care boys of his age and intelligence were accustomed to exercise under the same or similar circumstances, boys of ordinary prudence of his age, was not erroneous in its reference to deceased's immaturity.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. RAILROADS (§ 313\*)—CROSSING SIGNALS—STATUTES.**

Compliance with Rev. St. Ohio, § 3336, prescribing certain signals by bell, and whistle to be given by a railroad engine on approaching a highway crossing, does not excuse the railroad from taking other precautions, if the particular situation is such as to require them.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1005; Dec. Dig. § 313.\*

Duty to give warning signals at crossings, see note to Chesapeake & O. Ry. Co. v. Steele, 29 C. C. A. 90.]

**7. RAILROADS (§ 350\*)—CROSSING ACCIDENT—STATUTORY SIGNALS—NEGLIGENCE.**

Decedent was killed at a public street crossing as defendant's railroad was entering a city. There was a conflict of evidence as to whether the signals required by Rev. St. Ohio, § 3336, were given, and also as to the speed of the train, and whether falling snow was such as to obscure a view of the approaching train, and of the crossing from the train. *Held*, that the court properly charged that the giving of the statutory signals was not conclusive of the railroad company's freedom from negligence, and that it was for the jury to determine whether other precautions were required.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 350.\*]

**8. RAILROADS (§ 350\*)—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—PHYSICAL FACTS.**

Where, in an action for death at a railroad crossing, there was evidence that deceased stopped, looked, and listened shortly before going on the track, and that there was such a snowstorm in the face of one looking in the direction from which the train approached as to greatly obscure the view, and, as to the speed of the train, which might warrant an inference that it was not in sight when decedent started to cross, but came on him too swiftly to permit his escape, the fact that the track was straight, and the view unobstructed by curves, buildings, or standing cars, was insufficient to charge decedent with contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 350.\*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

L. A. Manchester and T. H. Gillman, for plaintiff in error.

D. F. Anderson, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

LURTON, Circuit Judge. This is an action by the administrator of Philip Weinstein for his tortious death, occasioned by his collision with a railway train at a street crossing at Niles, Ohio. There was a jury, and verdict and judgment for the plaintiff below.

There are four errors assigned upon requests for special charges which were refused. One of them was in these words:

"The looking required, before going upon a crossing, should usually be just before going upon the track, or so near thereto as to enable the person to get across before a train, within range of his view of the track, going at the usual rate of speed of fast trains, would reach such crossing."

Upon this general subject the court had already said to the jury:

"The law requires of one who is approaching a railroad crossing that he exercise his faculties of sight and hearing to avoid injury, and ordinary

care in such a case requires that, in approaching a situation so dangerous as a railway crossing, a person shall at least look and listen at such short distance from the crossing as to enable him to escape injury. Whether he should do more than that, whether he should stop, depends upon the circumstances of each particular case. It is all for you to determine under all the circumstances in the case."

The charge as given was a clear and sound exposition of the law applicable, and the court was under no obligation to repeat it, or to put it in the language of the request. In Railroad Co. v. Farra, 66 Fed. 496, 501, 13 C. C. A. 602, 607, this court said:

"The fundamental rule concerning the care to be exercised at a public railroad crossing by a traveler is that he must exercise that degree of caution usually exercised by prudent persons, conscious of the danger to which they are exposed at such crossings. If a crossing is peculiarly dangerous, a corresponding increase of caution is required. The general rule would, of course, demand that a vigilant use should be made of the eye in looking and of the ear in hearing. The failure to exercise these faculties by one approaching a crossing would be such a departure from the observance of that degree of caution exercised by prudent persons at such crossings as to raise, under ordinary circumstances, an inference of negligence about which reasonable men would not disagree."

To the same effect are the subsequent cases of McGhee v. White, 66 Fed. 502, 13 C. C. A. 608, and Illinois Central Railroad Co. v. Jones, 95 Fed. 370, 37 C. C. A. 106.

The charge as to the reciprocal character of the duties of those operating a train approaching a crossing and of travelers approaching a crossing was in accord with the settled law as declared in Continental Improvement Co. v. Stead, 95 U. S. 161, 164, 24 L. Ed. 403, and B. & O. Railroad Co. v. Griffith, 159 U. S. 603, 609, 16 Sup. Ct. 105, 40 L. Ed. 274. The remainder of the requests denied need not be considered in detail. The general charge substantially included them.

There are a number of errors assigned upon fragments of the general charge. Nearly every such assignment disregards the context. This is unjust to the trial judge and a waste of effort; for it is the duty of the court to give a reasonable interpretation to the instructions upon any particular subject, and, for this purpose, will examine the charge as a whole. To illustrate: The plaintiff in error assigns error upon these words:

"So that the question of liability is to be answered by the view you take of the duty and conduct of the parties involved in this accident at the time the accident occurred and immediately before."

The sentence criticised follows a brief statement of the issues the jury were to try, and was followed by a statement of the law applicable to the case and a close definition of the issues of fact which must determine the result. The court referred to the deceased as a boy, and told the jury, in substance, that in determining his contributory negligence they would consider "his age, his intelligence, his experience, and the surrounding situation, etc." Again he said:

"Ordinary care, as applied to him, is the kind of care which boys of his age and intelligence are accustomed to exercise under the same or similar circumstances, boys of ordinary prudence of his age."

That the deceased was a boy of 14 is not disputed. But it is said the court should have treated him as of full responsibility and so instructed the jury. Doubtless there is a period in the life of a minor when the full care due from an adult may be exacted as a matter of law. There are cases to that effect. Nagle v. Alleghany Railroad Co., 88 Pa. 35, 39, 32 Am. Rep. 413; Dietrich v. B. & O. Railroad Co., 58 Md. 347; 2 Thompson on Neg. § 1440.

The question of contributory negligence by the deceased was one to be established affirmatively as a defense, and in the case of a minor must be determined with reference to his age, his experience, and the particular situation. Although a child may have reached an age when responsible in law for his conduct, yet no higher degree of care should be expected than is usually exercised by persons of similar age, judgment, and experience. Undoubtedly the degree of care which should be required of a boy of 14 years of age is much greater than from one of half his age. So the experience of a boy of 14 may be such as to exact from him the care of an adult. These principles are well settled by this court and by the Supreme Court. Felton v. Aubrey, 74 Fed. 350, 352, 20 C. C. A. 436; Illinois Central Railroad Co. v. Jones, 95 Fed. 370, 37 C. C. A. 106; Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745; Railroad Co. v. McDonald, 152 U. S. 281, 14 Sup. Ct. 619, 38 L. Ed. 434. In the absence of a request for more specific instructions bearing upon the experience and maturity of the deceased, we cannot say that the court erred in its reference to his immaturity.

Error is assigned upon a paragraph in the charge in these words:

"It may be, gentlemen of the jury, that it is your duty to find that those signals were given; but it would not follow, because they were given, that therefore the railroad company had performed all of its duty as applied to this particular case, and it may or it may not have been all that it ought to do, according to the circumstances associated with this particular situation. Whether or not a signal by two long blasts and two short blasts of the whistle 1,000 or 1,500 feet back of this crossing, coupled with the rate of speed at which the train was running, was a sufficient notice and warning to persons about to cross that track, is a question for you to determine in your own good judgment, under the instruction and definition I have given you as to what is ordinary care under the circumstances of a particular situation; and the same rule of care is to be applied by you to the conduct of the boy when he was approaching the crossing."

The point relied upon is that if the railroad company had complied with the Ohio statute (section 3336, Rev. St.) prescribing certain signals by bell and whistle upon approaching a highway crossing, it would have discharged every duty required by law, and that it was error to tell the jury that such compliance, under the particular circumstances, might not be the due care required from the company. The Ohio statute does not provide that compliance with these crossing signals shall excuse the railroad from taking other precautions, if the particular situation be such as that due care at the particular place and time required other precautions. We think that compliance with such a statute will not exonerate a railway company from the charge of negligence, if the circumstances were such as that common prudence and proper regard for the safety of travelers at such crossing would require other precautions. Grand Trunk Rail-

road Co. v. Ives, 114 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Railway Company v. Kuhn, 86 Ky. 578, 6 S. W. 441, 9 Am. St. Rep. 309; Bentley v. Great Pacific Ry. Co., 86 Ala. 484, 6 South. 37; Railroad Co. v. Perkins, 125 Ill. 127, 17 N. E. 1; Thompson v. Railroad Co., 110 N. Y. 636, 17 N. E. 690; Chicago & N. W. Railroad Co. v. Netolicky, 67 Fed. 665, 14 C. C. A. 615.

There was a conflict of evidence as to whether the statutory signals were given. There was also a conflict of evidence as to the speed of the train and as to whether falling snow did or did not obscure a view of the approaching train and of the crossing from the train. This evidence raised the question as to whether, even if the signals by bell and whistle were given, other precautions should not have been taken, in view of the probable obscurity of the train by falling snow to one at the crossing. This crossing was where the tracks entered the city of Niles, and the highway crossed was a public street. Under the conditions existing, the charge was eminently proper.

Neither was there error in refusing to direct a verdict for the plaintiff in error. Confessedly there was evidence to go to the jury as to whether the statutory crossing signals had been given. There is, therefore, only the question of the contributory negligence of the deceased. This is sometimes a question of law, and sometimes a question of fact. There were at least two witnesses who testified to facts which tended to show that the deceased stopped, looked, and listened shortly before going upon the tracks. But counsel say that, from the fact that the track was straight and the view unobstructed by curves, buildings, or standing cars, it is clear that the deceased did not look; for, if he had looked, he could not but have seen, and, if he did see, it was gross negligence to persist in crossing. Upon this view of the matter the contention is that there was no conflict of the evidence to go to the jury, and the court should have instructed a verdict upon the contributory negligence of the deceased. If the undisputed physical facts made it so clear as to warrant no other inference than that the deceased by the use of his senses could have seen the approach of this train, if he had looked before reaching the crossing, in time to have kept off and permitted it to pass, or that he saw the train and endeavored to cross in front of it, the court would have erred in denying the motion for a peremptory instruction. Northern Pacific Railway Co. v. Freeman, 174 U. S. 379, 383, 19 Sup. Ct. 763, 43 L. Ed. 1014; Tomlinson v. Railroad Co., 134 Fed. 233, 234, 67 C. C. A. 218. But in this case there was affirmative evidence of attention, and none of inattention or recklessness, other than the inference that if he had looked he could have seen, or, seeing the approaching train, had attempted to cross in front of it. In contradiction of this inference there was evidence that there was such a snowstorm blowing in the face of one looking in the direction from which the train approached as to greatly obscure the view, and also evidence as to the speed of the train which might, in connection with the snowstorm, lead to an inference that the train was not in sight when he started to cross and that it came upon him too swiftly to permit his escape. The case was not one in

which the so-called "physical facts" were necessarily at variance with the evidence tending to show the exercise of care.

The charge as a whole was fully fair and sound, and the judgment must be affirmed.