## ROTHE v. PENNSYLVANIA CO

(Circuit Court of Appeals, Sixth Circuit. March 5, 1912.)

### No. 2,158.

1. RAILROADS (§ 244*)—CROSSING ACCIDENTS—LIABILITY—FAILURE TO GIVE SIGNALS.

Rev. St. Ohio, § 3337 (Gen. Code, § 8856), which makes a railroad company liable for injury caused by neglect to give warnings of the approach of locomotives to highways, does not fix liability for injury to a traveler at a crossing unless failure to give the signals caused the injury; nor in case the traveler was guilty of contributory negligence

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 755; Dec. Dig. § 244.*]

2. RAILROADS (§ 351*)—CROSSING ACCIDENTS—INSTRUCTIONS.

Under Rev. St. Ohio, §§ 3336, 3337 (Gen. Code, §§ 8853, 8856), which require locomotive whistles to be sounded at least 80 and not more than 100 rods from highway crossings, and make railroads liable for injury resulting from failure to do so, in an action for death of traveler at a street crossing, it was error to refuse to instruct that if the engineer did not sound the whistle between 1,320 and 1,650 feet west of the street, etc., the company was negligent, and, if decedent was killed through failure to sound a whistle, plaintiff could recover unless decedent was guilty of contributory negligence, though an instruction that plaintiff claimed that omission to give the signal was negligent was given.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

3. TRIAL (§ 261*)—INSTRUCTIONS—REFUSAL.

While a party may not complain of the refusal of a requested instruction which does not correctly state the law, the court being under no obligation to reframe a request so as to contain an accurate statement of law, where the meaning of a request is reasonably apparent, and its subject-matter is important and not sufficiently covered by the general charge, the request should not be ignored merely because susceptible to such an interpretation as to make its proposition not absolutely accurate.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 660, 671, 675; Dec. Dig. § 261.*]

4. RAILROADS (§ 307*)—CROSSING ACCIDENTS—NEGLIGENCE.

Compliance with Rev. St. Ohio, § 3336 (Gen. Code, § 8853), which requires locomotive whistles and bells to be sounded on approaching crossings, does not relieve a railway company from liability for injury to a traveler at a crossing resulting from negligent failure to take additional precautions by maintaining a watchman, crossing gates, etc., or from negligently running the train at a high rate of speed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 972–977; Dec. Dig. § 307.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL—MATTERS SUBSEQUENTLY COVERED.

In an action against a railroad company for negligent death of a traveler at a street crossing, it was not error under the facts of the case to refuse to instruct that giving statutory signals did not excuse additional precautions by maintaining a watchman or crossing gates "or some warning sound or bell," where the subject-matter of the requested instruction was fully given, except that specific mention was not made of the particular instrumentalities referred to in the request.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260;* Carriers, Cent. Dig. § 1407.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. RAILROADS (§ 351*)—CROSSING ACCIDENTS—INSTRUCTIONS—NEGLIGENCE.**

In an action against a railroad company for injury to a traveler at a street crossing, an instruction that, under stated circumstances, it would be the railroad's duty to maintain at such crossings a flagman, gates, bell, or some such warning signal, etc., as would prevent persons crossing the railroad from being injured, was properly refused, as exacting of the company more than reasonable care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

**7. DEATH (§ 58*)—CONTRIBUTORY NEGLIGENCE—PRESUMPTION OF DUE CARE.**

In an action for negligent death, decedent is presumed to have used reasonable care for his own safety, in the absence of evidence to the contrary.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 75–78; Dec. Dig. § 58.*]

**8. RAILROADS (§ 351*)—CROSSING ACCIDENT—INSTRUCTIONS.**

In an action against a railroad company for death of a traveler at a street crossing, an instruction that the law presumes that decedent used reasonable care for his own safety, in the absence of evidence to the contrary, should be given in connection with concrete instructions applicable to the particular case.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

**9. TRIAL (§ 252*)—CROSSING ACCIDENTS—INSTRUCTION.**

In an action against a railroad company for death of a traveler at a street crossing, an instruction basing liability "on the theory that the trainmen saw or should have seen decedent's peril in time to avoid collision" was properly refused, in the absence of applicable evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

**10. EVIDENCE (§ 474*)—OPINIONS—SPEED OF TRAIN.**

A witness is qualified to give an opinion as to the speed of a train where he has seen several trains a day passing the place during the preceding seven years, had watched other trains on other roads "a little bit," and always paid attention to the particular train because it was due when he went to work.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

**11. APPEAL AND ERROR (§ 1058*)—HARMLESS ERROR—EXCLUSION OF TESTIMONY.**

Error in excluding testimony of a witness as to the speed of the train which killed decedent at a street crossing was harmless to plaintiff, where the witness was permitted to testify that the train ran "lots faster than any other train."

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4206; Dec. Dig. § 1058.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by Mary Rothe, administratrix of Richard Rothe, against the Pennsylvania Company. Judgment for defendant, and plaintiff brings error. Reversed, and new trial ordered.

Joseph M. Blake, for plaintiff in error.

H. S. Armstrong (Carey & Armstrong, on the brief), for defendant in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This suit was brought for damages occasioned by the death of decedent, who, while attempting on foot to cross the railway tracks in Canton, Ohio, was struck and killed by one of defendant's passenger trains at a public highway crossing known as Carnahan avenue. The grounds of negligence relied on include failure of the engineer to sound the whistle and ring the bell when approaching the crossing, as required by the Ohio statute; failure to provide gates, watchman or automatic crossing signals, and to light the tracks; running at a dangerous and unlawful speed; and failure to give such warning as existing conditions demanded. The defendant denied negligence on its part, and alleged that deceased was contributorily negligent. The jury rendered verdict for defendant. The errors assigned relate to the refusal of requested instructions, and to the exclusion of one item of evidence offered.

[1] 1. The Ohio statute (R. S. § 3336; G. C. § 8853) requires every railway locomotive engine to carry a bell and steam whistle, and requires that the engineer or person in charge of the engine, on approaching a highway, shall "sound such whistle at a distance of at least eighty and not further than one hundred rods from the place of such crossing, and ring such bell continuously until the engine passes such crossing." R. S. § 3337 (G. C. § 8856), subjects the engineer or person in charge of the engine to penalty at the suit of the state for noncompliance with such requirements, and provides that:

"The company in whose employ such engineer or person in charge of an engine is, as well as the person himself, shall be liable in damages to any person or company injured in person or property by such neglect or act of such engineer or person."

This statute is construed as not conferring a right of action unless the omission of the signals caused the injury, nor in case the person injured is guilty of contributory negligence. Pennsylvania Co. v. Rathgeb, 32 Ohio St. 66, 72; Horn v. B. & O. Ry. Co. (C. C. A. 6) 54 Fed. 301, 303, 4 C. C. A. 346; Erie R. R. Co. v. Weinstein (C. C. A. 6) 166 Fed. 271, 275, 92 C. C. A. 189.

[2] There was evidence tending to show that the deceased, upon approaching the crossing, stopped, looked, and listened, and tending to show the exercise of due care on his part. There was also testimony tending to show that the statutory crossing signals referred to were not given, this testimony being, however, sharply disputed by defendant. Under the evidence, it was open to the jury to infer that the omission of the statutory signals caused the accident. Plaintiff asked the court to instruct the jury as follows:

"I will say to you as a matter of law that if you find from a preponderance of the testimony that the engineer in charge of the train that killed Richard Rothe, or other employé, did not sound the whistle of said train between 1,320 feet and 1,650 feet westerly from Carnahan avenue, and did not ring the bell on said engine continuously from said points of distance until said train had crossed Carnahan avenue, that the defendant is guilty of negligence; and if you find that, because of the failure to so sound said whistle

or ring said bell, the deceased, Richard Rothe, was killed, your verdict should be for the plaintiff in this case, unless you find that said Richard Rothe did not exercise reasonable and ordinary care in crossing said railroad track as an ordinarily prudent person would exercise under all the circumstances of the case."

This requested instruction was not given. It will be noted that this request expresses the statutory distance in feet instead of rods, as given in the statute. The court charged the jury that:

"The statute of Ohio declares it to be the duty of a railroad company, under those circumstances, to sound a whistle at a generally described distance from the crossing, and to ring a bell and keep it ringing until it passes the crossing, and it is claimed, on the part of the plaintiff, that the railroad company omitted the performance of this statutory duty, and that its omission was negligence."

And, after stating that the plaintiff does not confine her allegations of negligence to the failure to give the statutory signals, said:

"You are to determine what under all the circumstances surrounding the situation ordinary care called upon the defendant to do. What was it, considering everything that was there, that ordinary care required the representatives of the defendant to do? Ordinary care required them to give suitable signals of the approach of this train to this crossing; that is to say, such signals and such warning as persons of ordinary prudence under such circumstances are accustomed to give."

This is the only portion of the charge which we think fairly pertains to the subject-matter of the requested instruction.

It is clear that the subject-matter of this requested instruction was not covered by the charge. The jury were not told that the omission to give the signals was negligence, but only that the plaintiff so claimed; and the question of defendant's negligence was made to rest upon what "under the circumstances surrounding the situation ordinary care called upon the defendant to do." While a violation by a railroad company of a municipal ordinance regulating speed of trains is not generally held negligence per se, as distinguished from evidence of negligence (Erie R. R. Co. v. Farrell [C. C. A. 6] 147 Fed. 220, 221, 77 C. C. A. 446; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 418, 12 Sup. Ct. 679, 36 L. Ed. 485), the language of the statute in question, which may be referred to for the purpose of determining what constitutes negligence in Ohio as to giving crossing signals (B. & O. Ry. Co. v. Griffith, 159 U. S. 603, 607, 16 Sup. Ct. 105, 40 L. Ed. 274), clearly and unequivocally makes the defendant "liable in damages, to any person or company injured in person or property by such neglect or act of such engineer or person," in the absence of contributory negligence on the part of the injured person. The negligence of the defendant was established when the jury should find that the bell was not rung nor the whistle blown as required by statute. Jensen v. Railroad Company, 102 Mich. 176, 179, 60 N. W. 57.

The only criticisms made by defendant upon the requested instruction are, first, that it should be interpreted as declaring the duty of sounding the whistle the entire distance between a point 80 rods and a point 100 rods from the crossing—that is to say, a continuous blast during 330 feet—and, second, that the reference to "said points of

distance" must be construed as declaring the requirement that the bell be rung continuously from a point 100 rods, or 1,650 feet, from the crossing until the engine (or "train," as used in the request) had passed the crossing.

[3] While a party may not complain of the refusal of a requested instruction which does not correctly state the law, the court being under no obligation to reframe a request so as to contain an accurate statement of law, yet where, as here, the meaning of a request is reasonably apparent, and its subject-matter is important and not sufficiently covered by the general charge, a court would not be justified in ignoring the request merely because susceptible of such an interpretation as to make its proposition not absolutely accurate. We think the request fairly intelligible, and that the criticisms passed upon it are strained, and that the court should have instructed the jury according to its evident meaning. We do not mean to suggest that the refusal of the learned trial judge was due to criticism of the nature of that suggested.

[4, 5] 2. Plaintiff's second request was aimed at the proposition that compliance with the Ohio statute prescribing crossing signals, by way of bell and whistle, would not excuse the defendant from taking additional precautions (by way of maintaining watchmen or crossing gates, "or some warning sound or bell") in case the particular situation (viz.: the high speed of the train, the time of night, and an alleged foggy state of the atmosphere) were such as to require them. The eighth request asked the instruction that, notwithstanding the giving of the statutory signals, yet if the "train was operated at such a speed as to render unavailing, to a pedestrian crossing the tracks at a public crossing, the notice of the defendant required, that running at such a speed would be an unlawful and unnecessary speed, and that the company would thereby be guilty of negligence." The general proposition involved in these requests is a correct one. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Erie R. R. Co. v. Weinstein, supra, 166 Fed. 274, 92 C. C. A. 189, and cases there cited. The trial judge recognized this general proposition, and in his charge sufficiently covered the subject-matter of both requests, unless in failing to make specific reference to the failure to maintain watchmen, gatemen, "or some warning sound or bell," referred to in the second request. We cannot say there was error in omitting to refer to these particular instrumentalities, especially in view of the fact that, as respects some of them at least, the requested instruction made no distinction between conditions which were transient and those which were permanent in their nature.

[6] 3. By plaintiff's eleventh request, an instruction was asked that, under the circumstances there stated:

"It would be the railroad's duty to maintain at such crossings a flagman, gates, bell, or some such warning signal as would prevent persons crossing said railroad from being injured under such circumstances where the persons using said crossing exercised reasonable and ordinary care."

It is too well settled to require citation of authority that a railroad company is not bound to provide such means of protection as

will effectually prevent injury to persons crossing the track. Reasonable care in that direction is all that is required. The charge covered well and, fully the general duty of the defendant with respect to the exercise of reasonable care to prevent injury to persons crossing the tracks.

[7, 8] 4. By plaintiff's sixteenth request an instruction was asked that:

"In the absence of evidence to the contrary, the law presumes that a person in a place of danger exercised all reasonable care and caution to avoid that danger, and that a person going on a railroad track, where there is no evidence to the contrary, is presumed to have stopped, looked, and listened, unless the circumstances raise a presumption to the contrary."

And by the seventeenth request that:

"This presumption continues after the person is once upon the track and that the (decedent), in the absence of evidence to the contrary, will be presumed to have continued to have looked and listened and exercised ordinary care to prevent injury to himself after he first entered on the track, in the absence of evidence to the contrary."

The requests were not given, the jury, however, being instructed that the burden of proof was upon defendant to establish plaintiff's contributory negligence. The requests in question correctly state the abstract rule of law. Baltimore & Potomac Ry. Co. v. Landrigan, 191 U. S. 461, 473, 24 Sup. Ct. 137, 48 L. Ed. 262; Wabash Ry. Co. v. De Tar (C. C. A. 8) 141 Fed. 932, 934, 73 C. C. A. 166, 4 L. R. A. (N. S.) 352. The question is, Were they so far applicable to the facts of this case as to make their refusal error? There was not, in this case, an absence of testimony as to decedent's lack of care in crossing the track. There was direct evidence of eyewitnesses. The testimony was such that, while a verdict for the plaintiff would be warranted, we cannot say upon this record that a verdict for the defendant, based upon decedent's negligence, would not be sustainable. The rule applicable to this case is well stated by Judge (now Mr. Justice) Van Devanter, in Wabash Ry. Co. v. De Tar, supra, as follows:

"Because the natural instinct of self-preservation generally prompts men to acts of care and caution when approaching or in the presence of danger, there is, in the absence of credible evidence of the actual fact in any instance, a presumption of the exercise of due care and caution. * * * But it is a presumption of fact, not of law, and, like other presumptions arising from the ordinary or usual conduct of men, rather than from what is invariable or universal, it is disputable, and cannot exist where it is incompatible with the conduct of the person to whom it is sought to apply it."

And, after citation and discussion of numerous authorities, the learned justice said:

"It is thus plainly and authoritatively settled not only that the presumption of the exercise of reasonable care is a rebuttable inference of fact, but also that it does not have any probative force or weight in a case where the surrounding circumstances are shown to have been such that, had the injured person taken reasonable precautions for his safety, the injury would not have occurred."

See, also, in this connection, Baltimore & Potomac R. R. Co. v. Landrigan, supra, 191 U. S. 474, 24 Sup. Ct. 137, 48 L. Ed. 262.

We find nothing in Coffin v. United States, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481, opposed to the rule stated in the opinion of Judge Van Devanter just quoted. As this case must be tried again, we content ourselves with saying that, while the requested instructions we are considering would have been proper in connection with concrete instructions applicable to the particular case, they should not be given without such further explanation.

[9] 5. By plaintiff's eighteenth request the instruction was asked, in substance, that if the train employés did see, or by the exercise of reasonable care could have seen, decedent in a place of danger on the crossing, and if by the use of reasonable care the train could have been slackened in speed or stopped before reaching decedent, or, if the train was moving at an unreasonable speed, if decedent could or should have been seen by the train employés, provided the train had been operated at a reasonable rate of speed, and could have been stopped or slowed down before reaching him, so as to prevent collision, and the train employés negligently failed to keep a lookout and thus failed to see decedent, or, if after seeing him, they failed to slow down or stop the train, the defendant would be guilty of negligence. We think there was no error in refusing this request. The evidence was not such as to justify an instruction based upon the theory that the trainmen saw, or should have seen, decedent in a place of apparent danger in time to avoid the collision.

[10, 11] 6. A witness for the plaintiff, who saw the train in question pass on the night of the accident, testified that he had seen several trains a day pass during the preceding seven years, that he had watched others on other railroads "a little bit," and that he always paid attention to the train in question because it was due at the time he went to work. The train was a fast train, which did not stop at Canton. The court refused to allow the witness to give his opinion as to the speed of the train, apparently upon the ground that his experience was not such as to render his opinion competent. We think this ruling erroneous. Robinson v. Railway Company (C. C. A. 6) 112 Fed. 484, 486, 50 C. C. A. 357; Railroad Co. v. Van Steinburg, 17 Mich. 99. As said by Justice Cooley in the Van Steinburg case (cited by this court in the Robinson Case):

"Any man possessing knowledge of time and of distance would be competent to express an opinion upon the subject."

We should not, however, be inclined to reverse the case for this error, for, in our opinion, it was not prejudicial, as the witness was permitted to testify that the train in question ran "lots faster than any other train"; and such testimony would seem as beneficial to the plaintiff as an estimate by the witness of the speed in miles.

For the error in refusing plaintiff's first request to charge, the judgment of the Circuit Court is reversed, and a new trial ordered.