ERIE R. CO. v. WEBER.

SAME v. KRAFT.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1913.)

Nos. 2,339, 2,400.

1. RAILROADS (§ 350*)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Two persons, who, with a third, were walking along a street after dark in the evening, where it was crossed by seven railroad tracks, were struck and killed by an engine on the fifth track. There were gates at the crossing, which had been lowered on the approach of an engine and cars on the first track. There was testimony, the engine having stopped before reaching the crossing, the gates were raised. There was evidence that the parties looked in both directions and listened before going upon the track, but did not see nor hear the approaching engine; that their view in the direction from which it came was obstructed by steam and smoke from the standing engine, which was blowing in the direction they were walking; and also that the engine was running at a high rate of speed and did not sound either bell or whistle. *Held*, that the question of contributory negligence, as well as the negligence of the railroad company, was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRIAL (§ 178*)—MOTION FOR DIRECTED VERDICT—REVIEW OF EVIDENCE.
　　On request for directed verdict, the court is bound to take that view of the evidence most favorable to the adverse party.
　　[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. § 178.*]

3. EVIDENCE (§ 588*)—TRIAL (§ 140*)—CREDIBILITY OF TESTIMONY—QUESTION FOR JURY.
　　The credibility of witnesses is peculiarly a question for the jury, and in the absence of established facts and circumstances with which the testimony cannot be reconciled it cannot be disregarded as incredible.
　　[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Dec. Dig. § 588;* Trial, Cent. Dig. §§ 334, 335; Dec. Dig. § 140.*
　　Credibility of witnesses or parties testifying as question for jury, see note to Missouri, K. & T. Ry. Co. v. Collier, 88 C. C. A. 143.]

4. RAILROADS (§ 347*)—ACCIDENTS AT CROSSINGS—EVIDENCE OF NEGLIGENCE —VIOLATION OF SPEED ORDINANCE.
　　A violation of a city ordinance limiting the speed of trains is ordinarily evidence of negligence.
　　[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1124–1137; Dec. Dig. § 347.*
　　Effect of violation of statutes and ordinances regulating speed of trains. see note to Shatto v. Erie R. Co., 59 C. C. A. 5.]

5. EVIDENCE (§ 492*)—OPINION—SPEED OF TRAIN.
　　The admission of the testimony of a witness, giving his opinion as to the speed of a train when it passed a crossing, held not error.
　　[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2270; Dec. Dig. § 492.*]

In Error to the District Court of the United States for the Northern District of Ohio; William L. Day, Judge.

Actions at law by Edmund Weber, administrator of the estate of Anna Weber, deceased, and by Henrietta Kraft, administratrix of the estate of John Kraft, deceased, against the Erie Railroad Company. Judgment for plaintiff in each case, and defendant brings error. Affirmed.

Hine, Kennedy & Manchester, of Youngstown, Ohio, for plaintiff in error.

Charles Koonce, Jr., and Thomas McNamara, Jr., both of Youngstown, Ohio, for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. The decedents, Anna Weber and John Kraft, were struck and killed at the same time by defendant's locomotive engine. The respective suits therefor were separately tried, each resulting in verdict and judgment for the plaintiff. The cases are here on writs of error, and have been argued together. But four alleged errors have been discussed. The first two relate to both cases; the remaining two are limited to the Kraft case.

[1] 1. A request for directed verdict in defendant's favor was asked and denied. The accident occurred at a grade crossing in Youngs-

town, Ohio, about 5:30 p. m., on December 18th. The two decedents, in company with Mrs. Kraft, the wife of decedent John Kraft, approached the railroad tracks on Valley avenue from the west, on their walk home from church. It was already dark, and the switch lights were burning. At this crossing were seven tracks extending north and south; the most westerly being the Lake Shore lead track. Next east were three other Lake Shore tracks, next the Erie track, where the collision occurred, and two tracks still easterly. The plaintiffs' evidence tended to show that as the three pedestrians approached the Lake Shore lead track a switch engine thereon, running tender foremost and drawing a cut of cars from the north, approached the crossing; as it approached the gates were lowered; that the switch engine came to a full stop a short distance north of the crossing; that thereupon the gates were raised, and the three persons started to cross the tracks, looking up and down to avoid danger; that the crossing was not brightly lighted, the most prominent light being the headlight on the tender of the Lake Shore switch engine; that this engine was constantly discharging smoke and steam, which was carried by the wind in the direction the pedestrians were traveling, and at such a height as to obscure the view to the north; that there was also light snow in the air; that the parties crossed the tracks one after another, looking and listening for approaching cars or engines, but seeing and hearing nothing; that on approaching the Erie track they again looked and listened, both up and down the track, and seeing and hearing nothing stepped upon the track, when they were struck by the engine, running at a high rate of speed, variously estimated at from 20 to 40 miles an hour, with steam shut off and "drifting," and without ringing of bell or blowing of whistle. But for the smoke and steam from the switch engine, the view was unobstructed to the north for nearly half a mile. There was testimony on defendant's part tending to show the ringing of bell and blowing of whistle, and that the smoke and steam were not so dense or continuous as to prevent a view of the approaching train, and that its approach was not so quiet as to have prevented its being heard in time to avoid collision.

Defendant contends that the conduct of the three parties in crossing the tracks under those circumstances was so clearly imprudent as to justify a direction of verdict in its favor. We are unable to agree with this contention. It is conceded there was sufficient evidence of defendant's negligence to justify its submission to the jury.

[2] On a request for directed verdict, the court is bound to take that view of the evidence most favorable to the adverse party. Erie R. R. Co. v. Rooney (C. C. A. 6th Cir.) 186 Fed. 16, 19, 108 C. C. A. 118, and cases there cited. The testimony of Mrs. Kraft as to the inability of the parties to see or hear the approaching train was corroborated by two of their friends, who crossed the tracks but a short distance in front of the three who were thus overtaken by the engine, and who both testified that while crossing the tracks they looked and listened, neither saw nor heard the train (until what seems to have been the instant of collision), and heard no warning of its approach by bell or whistle.

[3] The credibility of the witnesses was peculiarly a question for the jury; and, in the absence of established facts and circumstances with which the plaintiff's evidence cannot be reconciled, it cannot be regarded as incredible. Erie Railroad v. Rooney, supra. It would seem that after getting part way across the tracks Mrs. Kraft, at least, realized the danger on account of the obscuring of the view to the north through smoke and steam, which she says was not apparent until after the Lake Shore lead track was crossed. She testified that she thought "there was no use for us to stop there, for we were in the middle of the tracks, and it was dangerous everywhere." It was only 27 feet from the center of the lead track to the center of the Erie track on which the collision occurred. The decedents may not unreasonably have felt that to turn back entailed as much danger as to go forward. Moreover, they had the right to take into account, in determining the question of safety, the practical invitation to cross and the qualified assurance of safety given by the raising of the gates; and under those circumstances they discharged their legal duty, if they used their senses of sight and hearing for their protection as soon as, and as far as, people of ordinary prudence would do under similar circumstances. Erie R. R. Co. v. Schultz (C. C. A. 6th Cir.) 183 Fed. 673, 676, 106 C. C. A. 23. Under all the testimony, we cannot say that decedents did not exercise such measure of care. The motion for directed verdict was properly overruled.

[4] 2. The court admitted as evidence of negligence an ordinance of the city of Youngstown, limiting the speed of trains within the corporate limits to 6 miles an hour, and unless accompanied by certain prescribed precautions to 4 miles. A violation of an ordinance of this character is ordinarily evidence of negligence. Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Rothe v. Pennsylvania Co. (C. C. A. 6th Cir.) 195 Fed. 21, 25, 114 C. C. A. 627; St. Louis & S. F. R. R. Co. v. Rutland, 207 Fed. 287 (decided by this court May 6, 1913).

Defendant assails the ordinance in question as unreasonable and void. Plaintiffs relied upon the provision limiting speed to 6 miles. In Railroad Co. v. Ives, supra, the ordinance which was received as evidence of negligence limited the speed to 6 miles in the city of Detroit. It is not necessary, however, to pass upon the reasonableness of this ordinance, for we think its admission nonprejudicial, in view of the concession by the engineer driving the engine, that the train was running at a speed of 20 to 22 miles an hour.

[5] 3. It was not error to allow the witness Koch to testify to the speed of the train. See Rothe v. Pennsylvania Co., supra, 195 Fed. at page 27, 114 C. C. A. 627, and cases there cited.

4. The court excluded the testimony of the Erie train conductor that the bell was ringing when the train approached the Youngstown depot, which was about a mile from the place of the accident. It was offered to corroborate the testimony of the engineer that the bell was operated automatically by air, that when once started it continued to ring until shut off, that it was so started at Meadville, and was not shut

off until Youngstown was reached, thus supporting (as claimed) an inference that it was ringing at the time of the accident.

Upon the whole case, we think the effect of the proffered testimony (depending, as it did, upon inference from inference) too remote, and its weight too slight, to predicate prejudicial and reversible error upon its exclusion, even if technically erroneous.

The judgments of the District Court are affirmed, with costs