ROBBINS v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Sixth Circuit. March 4, 1919.)

No. 3204.

1. RAILROADS ⊂⟩350(1)—INJURIES ON TRACK—NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad for a death on its track at a crossing, withdrawal from the jury of the question of the railroad's negligence *held* erroneous, in view of the testimony.

⊂⟩For other cases see same topic & KEY NUMBER in all Key-Numbered Digests & Indexes

2. DEATH ⬧⬨58(1)—PRESUMPTION—EXERCISE OF CAUTION.
　　The law presumes that one killed on a railroad crossing followed the instinct of self-preservation, and exercised due caution, and looked and listened for approaching trains; a presumption which is disputable and must yield to convincing evidence.

3. RAILROADS ⬧⬨350(13)—DEATH ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
　　In an action against a railroad for a death on its track, question of decedent's contributory negligence held for the jury.

In Error to the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by Charles Robbins, administrator of the estate of Dinna Beamer, deceased, against the Pennsylvania Company. To review a judgment for defendant, plaintiff brings error. Reversed, with direction to award new trial.

Francis R. Marvin, of Cleveland, Ohio, for plaintiff in error.
Thomas M. Kirby, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. Suit for the negligent killing of decedent. At the conclusion of plaintiff's testimony the trial court directed verdict for defendant.

The main street in the village of Nevada, Ohio (which we shall call Main street), runs north and south. It is crossed at right angles by defendant's railroad right of way, on which were at least two tracks. On each side of Main street there was a cross walk over the railroad right of way. According to the tendency of the proof, decedent, who was 19 years of age, at about 8:10 p. m. of December 27th left the house of her friend, which was on the east side of Main street and 50 or 60 feet south of the railroad tracks, for the purpose of mailing a letter at the post office, which was on the west side of Main street and on the north side of the tracks. She expected to return to her friend's house immediately on mailing the letter. At the time she started on this errand the south track was occupied by a long and slowly-moving east-bound freight train. At about the time the caboose at the rear of this freight train passed out of the street, an engine drawing a short, west-bound freight train on the northerly track, and running at a speed of 55 to 60 miles an hour, suddenly burst into view, without ringing of bell or blowing of whistle. The proof tended to show that it was this west-bound train on the northerly track which struck and killed decedent.

The grounds on which the verdict was directed were, first, that plaintiff had not sustained the burden of showing that defendant's alleged negligence was the direct and proximate cause of decedent's death; and, second, that decedent conclusively appeared contributorily negligent.

The place where the collision occurred is material on the question both of defendant's and of decedent's negligence. No one saw dece-

⬧⬨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dent after she left her friend's house, and the point of collision is left to inference. The language of the trial judge in directing verdict suggests that he thought the collision must have occurred at the east crossing. However that may be, we think the inference more natural that it occurred at the west crossing. To say the least, such inference is entirely permissible. It is supported by the considerations, first, that, the post office being on the west side of Main street decedent would naturally, to save time, pass over to the west crossing while the freight train was going past, even though there was no planked crossing on the south side of the tracks; second, the first evidence of the place of collision, in the way of fragments of decedent's body, was found, two hours later, 100 feet west of the west crossing and between the rails of the north track.

[1] In our opinion it was error to withdraw from the jury the question of defendant's negligence. But two witnesses testified to seeing the two trains. Neither gave the precise situation of the trains at a given moment, beyond the fact that both were between the two street crossings at the same time, and within the limitations about to be stated. One testified that the caboose of the east-bound train "was on the crossing about the same time as the engine of the westbound train," and later that the "caboose of the train going east and the engine of the train going west I would estimate as occupying the foot crossing on the east side at the same time, but it might have been a little farther east and it might have been a little farther west." The other testified, in substance merely, that the "east-bound train when I first saw the west-bound train, was going across the crossing; going east across the crossing. The rear part of the east-bound train was crossing the crossing when the west-bound train came into view. By that I mean about the caboose part." And again: "So that the engine of the west-bound train and the caboose of the east-bound train were on some portion of the highway at the same time." The fact that decedent, a telephone operator—there being nothing to indicate that she was not at least of ordinary intelligence and in the possession of her faculties—coming from the south, was struck by an engine suddenly projected without warning bell or whistle from the east across the main street of the village at the speed stated (which would require less than one second to cross an ordinary four rod street), concealed at first from decedent's view by the presence of a long freight train in front of her, which also muffled the sound of the west-bound train, would clearly support an inference that defendant's negligence in so operating its west-bound train was the direct and proximate cause of the accident.

[2, 3] As respects the charge of contributory negligence: The trial judge thought decedent must either have crossed behind the east-bound train immediately on its clearing the sidewalk, when she was not in position to see the west-bound train, or have gone ahead without looking to see whether a train was coming from the east. This conclusion is not, in our opinion, inevitable, at least on the theory that the collision occurred at the west crossing. Defendant had the burden of proving decedent's negligence. The law presumes that

following the instinct of self-preservation she exercised due caution, and that before crossing the tracks she looked and listened for approaching trains. Baltimore & Potomac R. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262; Worthington v. Elmer (C. C. A. 6) 207 Fed. 306, 309, 125 C. C. A. 50; Pittsburgh, etc., R. R. Co. v. Scherer (C. C. A. 6) 205 Fed. 356, 359, 123 C. C. A. 484. True, this presumption of due care is disputable, and must yield to convincing evidence that had decedent looked east after the east-bound train had ceased to obstruct her view she must have seen the west-bound train in time to save herself. Evans v. Railway Co. (C. C. A. 6) 213 Fed. 129, 129 C. C. A. 375.

But such condition does not, we think, conclusively appear. It did not appear how far away the west-bound train could be seen by one standing at the west crossing on the south side of the two tracks. There was no evidence of the condition of the headlight of the west-bound engine, or how far to the east the track was either straight or unobstructed. It affirmatively appeared that the night was dark and the lights in the town poor, and it did appear that buildings completely hid the west-bound train from the view of persons 200 to 400 feet north of the crossing, and on either side of the main street, until the engine was actually "on the crossing." It did not appear what the distance was between the two tracks in question, and as the case stood it was reasonably conceivable that had decedent looked and listened before attempting to cross she might have been struck by the swiftly moving train before she could get out of its way. The sudden appearance without warning of the train on the north track might well have created a confusion accounting for the collision. Pittsburgh, etc., R. R. Co. v. Scherer, supra, 205 Fed. at page 359, 123 C. C. A. 484.

The instant case is in its controlling facts substantially like the Scherer Case, in which we held that the question of contributory negligence was for the jury. The most prominent difference is that in the Scherer Case there was evidence of the movement of later trains on the night of the collision, but in view of the conclusion that the testimony supports an inference that the west-bound train in question was the one which struck and killed decedent, the differences between the two cases are unimportant.

We think the question of plaintiff's contributory negligence should also have been submitted to the jury.

The judgment of the District Court is reversed, with direction to award a new trial.