(88 South. 31)

HINES, Director General of Railroads v. BEASLEY.  (4 Div. 630.)

(Court of Appeals of Alabama. Nov. 16, 1920. Rehearing Denied Jan. 11, 1921.)

1. WITNESSES ☜286(4) — TESTIMONY ON CROSS-EXAMINATION HELD TO WARRANT THAT ON REDIRECT EXAMINATION.

In an action for damages sustained in a crossing accident, where defendant's counsel, on cross-examination of plaintiff's witness, brought out testimony that the train had passed "several mornings" without blowing, it was not error to permit testimony on redirect examination that it had passed "several times" without blowing, as the question and answer were invited.

2. WITNESSES ☜260 — QUESTION WHETHER WITNESS TESTIFYING TRAIN DID NOT SOUND WARNING HEARD WHISTLE OR BELL WHEN SOUNDED, HELD COMPETENT.

Where a witness testified that he lived about three-fourths of a mile from a railroad crossing, and that a train did not blow the whistle or ring the bell on the morning of an accident, a question whether he heard it when the train blew the whistle and rung the bell was properly permitted.

3. RAILROADS ☜316(3)—SPEED IN FOG MUST ENABLE ENGINEER TO STOP WITHIN HIS VISION.

On a cloudy, foggy morning, when the driver of a railroad engine cannot see beyond a given distance, it is his duty to drive at such a rate of speed as to be able to stop within such distance.

4. RAILROADS ☜327(8) — INSTRUCTIONS ON DUTY TO STOP, LOOK, AND LISTEN HELD INCORRECT.

Instructions requiring one crossing a railroad to stop, look, and listen for trains at such a point that he could have a clear view of the track both ways were properly refused as misleading and incorrect.

5. RAILROADS ☜327(8) — TIME AND PLACE FOR STOPPING, LOOKING, AND LISTENING STATED.

One approaching a railroad crossing must stop, look, and listen at such time and place, with reference to the particular situation in each case, as will enable him to accomplish the purpose the law has in view in the imposition of such duty, and so as to preclude the injection of the element of danger between the time he stops, looks, and listens, and his attempt to cross.

6. TRIAL ☜194(17)—INSTRUCTION AS TO DUTY OF ENGINEER TO SLACKEN SPEED HELD TO INVADE PROVINCE OF JURY.

An instruction that, if a railroad engineer, approaching a crossing, saw a team from 20 to 30 feet from the crossing, he was under no duty to slacken the speed of the train until he discovered that the driver was not going to stop, look, and listen as he approached the crossing, was properly refused, as it invaded the province of the jury.

7. TRIAL ☜252(9)—INSTRUCTION ON UNLAWFUL OR RECKLESS SPEED PROPERLY REFUSED WHEN NOT IN ISSUE.

Where the question whether a train was being run at an unlawful or reckless rate of speed entered into the case merely as an incident, and not as an issue, a charge thereon was properly refused.

8. TRIAL ☜251(8)—CHARGE PROPERLY REFUSED AS EMBRACING EVERY SPECIES OF NEGLIGENCE ON PART OF DRIVER AT CROSSING.

In an action for damages in a crossing accident, an instruction that if the driver of a wagon was guilty of any negligence in the driving and management of the team, and if such negligence proximately contributed to the injury sued for plaintiff could not recover, was properly refused, as it embraced every species of negligence on the part of the driver.

9. RAILROADS ☜350(22) — CONTRIBUTORY NEGLIGENCE OF TRAVELER CROSSING IN FOG HELD QUESTION FOR JURY.

In an action for damages in a crossing accident, evidence that the morning was foggy and cloudy held to make a question for the jury, though the evidence showed that ordinarily one approaching the crossing could have seen the train for 100 to 200 feet.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Action by M. L. Beasley against Walker D. Hines, as Director General of Railroads,

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

operating the Central of Georgia Railroad, for damages for killing of certain mules by one of the trains of the defendant. Judgment for plaintiff, and defendant appeals. Affirmed.

The oral charge of the court excepted to is as follows:

"There was another rule of law with regard to approach of trains or to the operation of a train on a foggy morning. If it is a fact, or if you should be reasonably satisfied from the evidence, that this was a cloudy, foggy morning, and that the driver of that engine could not see beyond a given distance, then the duty was imposed on him under the law to drive at such a rate of speed as to be able to stop within his vision; for instance, supposing that he could see a quarter of a mile, then he must operate that train in such a manner as that he would be able to stop that train on seeing any given object that distance away."

The following are the charges refused to the defendant:

(1) If the jury believe from the evidence that Joe Lassiter, the driver of the wagon, failed to stop and look and listen for the approach of the train at such a point as he could have a view of the track up and down the track, then the plaintiff cannot recover in this case.

(2) Although the jury may believe from the evidence that the engineer failed to blow the whistle or ring the bell as the train approached said crossing, yet if the jury further from the evidence that Joe Lassiter, the driver of the wagon, failed to stop and look and listen as he approached the crossing at a point where he could have a clear view of the track, the plaintiff cannot recover in this case.

(4) If the jury believe from the evidence that when the engineer approached the crossing he saw the team from 20 to 30 feet from the crossing, then the engineer was under no duty to slacken the speed of the train until the engineer discovered that the driver of the wagon was not going to stop and look and listen as the driver approached said crossing.

(7) If the jury believe from the evidence that the driver of the wagon was guilty of any negligence in the driving and management of the team, which was hitched to the wagon, and which was being driven over said crossing, and that such negligence approximately contributed to the injuries sued for in this action, then the plaintiff would not be entitled to recover, and your verdict should be for the defendant.

G. L. Comer & Son, of Eufaula, for appellant.

Court erred in overruling objection to the testimony of Gache and refusing to exclude his. answer. 3 Ala. 679; 60 Ala. 621; 63 Ala. 601; 71 Ala. 509; 72 Ala. 451. Court erred in its oral charge to the jury. 143 Ala.. 490, 39 South. 265, 5 Ann. Cas. 414; 158 Ala. 596, 48 South. 357; 6 Ala. App. 470, 60 South. 546. Court erred in refusing charges 1 and 2. 190 Ala. 91, 66 South. 697; 191 Ala. 622, 68 South. 139; 192 Ala. 392, 68 South. 277; 196 Ala. 133, 72 South. 67; 10 Ala. App. 298, 64 South. 666; 190 Ala. 104, 66 South. 712; 199 Ala. 532, 75 South. 4. Court erred in refusing to give charge 4. 116 Ala. 198, 22 South. 457; 125 Ala. 199, 27 South. 1006; 156 Ala. 323, 47 South. 323; 179 Ala. 299, 60 South. 922; 186 Ala. 119, 65 South. 153. Court erred in refusing to give charge 7. 62 Ala. 494; 90 Ala. 185, 8 South. 518, 11 L. R. A. 674; 117 Ala. 369, 23 South. 231, and authorities supra. Counsel discuss other assignments of error, not touched on in the opinion.

Sollie & Sollie, of Ozark, for appellee.

The given charges are omitted from the transcript, and are presumed to cover the refused charges. 170 Ala. 590, 54 South. 507; 8 Ala. App. 167, 62 South. 1027. The court's oral charge was proper. 121 Ala. 230, 25 South. 731, 77 Am. St. Rep. 52; 148 Ala. 44, 41 South. 427; 11 Ala. 256. There was no error in the admission or rejection of evidence, nor in the special charges refused to the defendant.

MERRITT, J. The plaintiff brought a suit to recover damages of the defendant for killing his mules and injuring his wagon by one of defendant's trains. There was judgment for the plaintiff, and from this judgment the defendant appeals.

Written agreement of counsel and supplementary transcript on file in this case eliminate from our consideration many of the questions raised by the original assignment of error.

[1] An exception was reserved to the action of the court in permitting the witness Bob Gachet to testify that the trains passed the place of injury lots of times without blowing. On cross-examination counsel for appellant had drawn from the witness Bob Gachet these statements:

"I live there all the time. That train did not blow at that crossing on October 2d. I was noticing because I was looking for it. That was the morning of the accident when I was doing that. Yes, sir; I was looking for it a heap of times. The train passed there several mornings without blowing. Yes, sir; I know about it every time. I notices it every time it blows, and can tell every time that train blows when I am at home."

Upon redirect examination counsel for appellee asked the witness if the train had passed there lots of times without blowing. Counsel for appellant had invited the question and answer of which complaint is made, and, besides, there is no such difference in "passing there several mornings without blowing," and "passing there several times without blowing," as to place the trial court in error on account of such ruling.

[2] On direct examination of the witness Jeff Clayton he was asked and permitted to answer, over the general objections of the

defendant, the following question: "When the train coming in in the morning blows the whistle and rings the bell, do you hear it?" The witness had stated that he lived about three-quarters of a mile from the crossing where the mules were killed, and later on in his direct testimony stated that the train did not blow its whistle nor ring its bell the morning the mules were killed.

The fact of the witness' proximity to the crossing, his opportunity for hearing the train when it came in, and the statement that, when it comes in and blows the whistle and rings the bell, he hears it, was competent, as tending to show whether or not the whistle was blown or the bell rung the morning the mules were killed. Furthermore the witness stated that, on the morning of the injury, "the train did not blow its whistle nor ring its bell."

[3] There was no error in that portion of the court's oral charge in reference to the operation of appellant's train on the morning of the injury. Some of the evidence tended to show this to have been a foggy morning, and such at or very near the place where the injury occurred, and we think the charge of the court a correct statement of the law that should govern the operation of trains under such circumstances, should the jury believe such circumstances to have existed at that time. Ala. M. Ry. Co. v. McGill, 121 Ala. 230, 25 South. 731, 77 Am. St. Rep. 52; W. Ry. of Ala. v. Mitchell, 148 Ala. 44, 41 South. 427; L. & N. Ry. Co. v. Fox, 11 Ala. App. 256, 65 South. 917; Mobile L. Ry. Co. v. R. O. Harris Grocery Co., ante, p. 354, 84 South. 867.

[4, 5] Written charges 1 and 2 were properly refused. They are misleading, and do not correctly state the law. The duty to stop, look, and listen before attempting to cross a railroad track must be performed at such time and place, with reference to the particular situation in each case, as will enable the traveler to accomplish the purpose the law has in view in its imposition. He must stop so near as his survey by sight and sound must immediately precede his efforts to cross over, so as to preclude the injection of the element of danger from the approaching train between the time he stopped, looked, and listened and his attempt to proceed across the track. Central of Ga. Ry. Co. v. Foshee, 125 Ala. 213, 27 South. 1006.

[6] Written charge 4 invades the province of the jury. .

[7] No issue made by the pleadings is made to hinge upon the inquiry as to whether or not, at the time of the injury, the train was being run at an unlawful or reckless rate of speed. That inquiry enters into several aspects of the case, but as an incident thereto, and not as an issue in the case. Written charge 6 was properly refused.

[8] Written charge 7 embraces every species of negligence on the part of the driver having to do with the driving or the management of the team hitched to the wagon, provided it contributed approximately to the injuries complained of. The charge was properly refused.

[9] The appellant argues at great length in this case that it was entitled to the affirmative charge requested by it in writing, which was refused by the trial court. This insistence is based in part on the ruling of our Supreme Court in the case of Peters v. So. Ry. Co., 135 Ala. 533, 33 South. 332, wherein it is said:

"When facts are admitted which conclusively establish another fact, the mere denial by a witness of the * * * fact so established does not, and should not, create that material conflict in evidence which would require the submission of the issue to the jury."

See, also, the following cases: Richards v. Sloss-Sheffield Steel & I. Co., 146 Ala. 254, 41 South. 288; So. Ry. Co. v. Irvin, 191 Ala. 622, 68 South. 139.

There seems to be little doubt, from a consideration of all the evidence in the instant case, but that, ordinarily, one approaching the crossing where the injury occurred could have seen from one to two hundred feet up the track, the direction from which the train was coming, and that from within a distance of 40 or 50 feet from the crossing. The testimony, however, tends to show that on the morning of the injury (which occurred shortly after sunup) it was cloudy, damp, and foggy. One or more witnesses stated it was very foggy, another stated that he could hardly see how to drive his car to town that morning from his house, and another that there was a powerful fog that morning. Several witnesses testified, who claimed to have seen the train the morning of the injury, that it could be seen for only a short distance, and, further, that it could be heard for only a short distance.

The witness who was driving the team at the time of the injury testified:

"I did not see any train and did not hear any train. I looked up and down the track to see if I could see the train. I did this when I was about 10 feet from the track. I mean steps instead of feet. The atmosphere that morning was foggy, a deep fog."

The testimony offered for the plaintiff further tended to show that the whistle was not blown, nor was the bell rung, that morning.

The testimony for the defendant was in conflict with that offered by the plaintiff. The engineer testified that at the time of the injury the train was running about 30 miles per hour. So it clearly appears that, if the plaintiff's contention be correct, there was a heavy fog, that he stopped, looked,

and listened just before going on the track, that he could see only a short distance, and neither heard nor saw the approaching train, that the doctrine laid down in the Peters Case, supra, and sought to be invoked here, cannot apply, for the very simple reason that the facts do not fit this case. Of course, should the jury believe the defendant's contention it would not be liable. But there being so many conflicts in the testimony, and so many diverging tendencies of the same, the matter was rightly left to the jury to pass upon.

In the case of So. Ry. v. Irvin, supra, the Supreme Court says:

"There can be no doubt, under the evidence in this record, that, had Greer observed the duty of precaution the law laid on him, he would not have so exposed himself as to be stricken by the train that took his life. His companion, who was walking a few feet ahead of him, testifies that they stopped and looked and listened, and no information of the approaching train was afforded them. This act of stopping was 10 feet from the track. If they looked for trains, as he testifies, and if their view was not obstructed by 'grass or bushes,' then the denial that no train was observable must be, and is, set down with the impossible."

As pointed out above, the facts in the instant case, as contended by the plaintiff, differentiate it from the above case for that there was some evidence of "fog" on the morning of the injury, which plaintiff claims obstructed his view.

The case was properly submitted to the jury, and, finding no reversible error in the record, the judgment is affirmed.

Affirmed.