## BECKHAM v. HINES, Agent, etc.

(Circuit Court of Appeals, Sixth Circuit. February 7, 1922.)

No. 3599.

1. **Railroads ⬅350(11)—Negligence in approaching crossing held question for jury.**

Evidence that a train approached a highway crossing, where the view was obstructed, at a speed of 45 miles an hour, without warning by bell or whistle, *held* sufficient to authorize the submission of the question of negligence to the jury.

2. **Railroads ⬅350(22)—Contributory negligence of automobile driver held question for jury.**

In an action for the death of an automobile driver, struck at a crossing where the view was obstructed for several hundred feet, direction of a verdict for defendant on the ground of contributory negligence *held* error, in view of the fact that the burden of proving such negligence rested on defendant, and in the absence of any testimony of eyewitnesses to overcome the presumption that deceased looked and listened, and where the train was running at a speed of 45 miles an hour, and there was evidence that it gave no warning by bell or whistle.

3. **Railroads ⬅350(18)—Automobile driver's negligence in failing to stop question for jury.**

A person driving an automobile on a highway is not bound as matter of law to actually stop before going upon a railroad crossing, but whether it was negligence to fail to do so is a question of fact for the jury.

4. **Railroads ⬅350(7)—Warning a question for jury on conflicting evidence.**

A court cannot determine as matter of law, on the testimony of those in charge of the engine of a train, that the bell and whistle were sounded on approaching a crossing, where there is testimony to the contrary.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action at law by Sam Beckham, administrator of the Estate of Carroll Blair, deceased, against Walker D. Hines, Agent, etc. Judgment for defendant, and plaintiff brings error. Reversed.

Mocquot, Berry & Reed, of Paducah, Ky. (J. M. Brummell, of Clinton, Ky., on the brief), for plaintiff in error.

Kane & Bullock, of Bardwell, Ky., (John E. Kane, of Bardwell, Ky., Carl Fox and E. T. Bullock, both of Clinton, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff's intestate, while driving an automobile on the highway, was struck at a railroad crossing by a train of the Mobile & Ohio Railroad Company, then under federal control,

---

and was killed. On the trial of the resulting suit for damages, verdict was rendered for defendant by direction of the court. This writ is to review the judgment.

The railroad tracks extended north and south; the highway crossed the track at practically a right angle thereto. Plaintiff was driving west; the train was running north. The country surrounding the crossing was hilly, and both the railway tracks and the highway were in deep cuts. The south highway embankment at the crossing was about 2 feet 8 inches high; it continued east about 500 feet, until it progressively reached a height of 8 feet, after which it fell off to some extent. Going westerly, and from a point about 500 feet east of the crossing to a point 42 feet therefrom, there is a rise of about 8¾ feet in the highway grade; and between the point last mentioned and the track the highway rises about 5¼ feet. Upon the embankment on the south side of the highway the view was further obstructed by fences, weeds, and bushes. On the easterly side of the railroad track, and running south from the highway, the cut was about 1,400 feet long; the embankment at the crossing being about 2 feet 8 inches high and growing higher as it proceeded south, until at a distance of about 520 feet it reached a height of 12 feet 3 inches. This easterly embankment was also more or less incumbered by bushes and otherwise.[1] A train coming from the south could not be seen by one traveling westerly on the highway from a point about 600 feet east of the railroad until within 12 to 17 feet from the railroad track (and then only if the train was within 100 to 200 feet from the crossing), although the view of one actually on the track was unobstructed for several hundred feet south. A strong wind was blowing from the north, and the hearing of bell or whistle from a north-bound train would have been obstructed for a distance of one-fourth to one-half mile from the highway. At the time of the collision the train was running 45 miles an hour.[2] The negligence charged against defendant was the operation of the train and its propulsion over the crossing at a high and dangerous rate of speed, and when not under the control of the operators thereof, and without proper warning signals of its approach. The answer denied the alleged negligence of defendant and asserted contributory negligence of plaintiff. The direction of verdict was based entirely on a conclusion of contributory negligence.

[1] The court rightly refused to direct verdict for alleged lack of proof of defendant's negligence. There was abundant testimony tending to show that no bell was rung nor whistle sounded as required by statute, nor within any reasonable distance from the crossing. The engineer did not see decedent or his automobile until the engine was within about 75 feet of the crossing, and the train, at the speed at which it was running, could not be stopped within 350 feet. It was

---

[1] The embankment of the highway extended west of the railroad, and the west embankment of the railway extended a long way south of the highway. Heights and distances are not material.

[2] We have, of course, stated the evidence in its aspect most favorable to plaintiff, as we are bound to do in case of a directed verdict. Erie R. R. Co. v. Weber (C. C. A. 6) 207 Fed. 293, 295, 125 C. C. A. 37.

clearly open to the jury to find that the propelling of the train over the crossing at this high rate of speed, without warning by bell or whistle, and under the circumstances stated, was actionable negligence. Lehigh Valley R. R. Co. v. Kilmer (C. C. A. 2) 231 Fed. 628, 631, 145 C. C. A. 514; Harmon v. Barber (C. C. A. 6) 247 Fed. 1, 7, 159 C. C. A. 219, L. R. A. 1918F, 428.

[2] We think, however, that the court was clearly in error in holding decedent guilty of contributory negligence as matter of law. The burden of proof of decedent's negligence was on defendant. Central Vermont R. R. Co. v. White, 238 U. S. 507, 512, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Erie R. R. Co. v. Weinstein (C. C. A. 6) 166 Fed. 271, 274, 92 C. C. A. 189. In the absence of satisfactory evidence to the contrary on the part of eyewitnesses, the law presumes that decedent looked and listened before crossing the track. Robbins v. Pennsylvania Co. (C. C. A. 6) 257 Fed. 671, 673, 168 C. C. A. 621. True, the engineer (and he is the only witness who claims to have seen decedent before the accident) testified that when the engine was within about 75 feet of the crossing he saw decedent in the automobile about 10 feet from the track and driving rapidly. But the jury was not bound to accept this statement as any evidence of the alleged fact, for the witness later testified that when he first saw decedent the latter was "actually driving on the track. * * * Yes; his front wheels were on the track." In view of these conflicting statements of the only eyewitness produced (to say nothing of other considerations affecting the engineer's credibility), the jury had the right, in determining the facts, to weigh the presumption of due care on decedent's part against the testimony of the engineer.

[3] The trial court laid some stress upon the proposition that when decedent was within 16 or 17 feet of the track he could have seen the approaching train, and that it was then not too late to avoid collision. We think it was error to so decide as matter of law. When decedent was within 16 feet of the track the front of the automobile would have been nearer than that; indeed, if the automobile was not visible to the engineer until within 75 feet of the point of collision, to traverse this 75 feet by a train running 45 miles an hour (66 feet per second) required but about $1^1/_7$ seconds of time. That he did not approach the track at a rapid speed is shown by the testimony that his automobile was found after the collision to be in low gear, which would prevent its running more than 10 miles an hour. Moreover, the ruling excluded the not impossible inference that the train's sudden appearance created an emergency calling for such action as in that emergency seemed most prudent. It was clearly within the jury's province to find that decedent was in the exercise of due care in making the crossing. It cannot be said, as matter of law, that there was any obligation on decedent's part to actually stop his car. That was at most a question of fact for the jury. L. E. & W. Ry. Co. v. Schneider (C. C. A. 6) 257 Fed. 675, 678, 168 C. C. A. 625; Begert v. Payne (C. C. A. 6) 274 Fed. 784, 790, 791.

[4] Upon the question whether bell and whistle were sounded, as claimed by defendant, neither the trial court nor this court can, in con-

sidering the propriety of directing verdict, take into account the superior means of knowledge possessed by the members of the train crew. While the testimony of train employees as to sounding of bell or whistle should not be discredited merely because of their employment, it cannot be accepted by the court as conclusive merely because they were in a position giving them better means of knowledge than other witnesses. Their credibility was solely for the jury, so long as the testimony to the contrary does not plainly contravene natural laws. Hales v. Mich. Central R. R. Co. (C. C. A. 6) 200 Fed. 533, 536, 537, 118 C. C. A. 627; Begert v. Payne, supra, 274 Fed. at page 789.

The same consideration answers the suggestion that the engineer's testimony on direct examination, rather than that given on cross-examination, as to decedent's position when first seen by the engineer should be accepted. We are not, however, to be understood as holding that plaintiff could not recover, even if the engineer's testimony first given were to be accepted. It was open to the jury to find that a train running 66 feet a second would not have been within decedent's view when he was but 16 or 17 feet from the crossing. Traveling at 10 miles per hour, his automobile would have traversed 15 feet in one second; and there was testimony justifying a finding that decedent was not warned by bell or whistle of the train's approach, and that the northerly wind prevented his hearing the noise made by the train on the south. It was open to the jury to find that he did not realize that the wind might prevent his hearing the approaching train, and that he was not negligent in failing to so realize. If not, it could not be said, as matter of law, that he was bound to stop, even though his view was obstructed. L. E. & W. Ry. Co. v. Schneider, supra; Begert v. Payne, supra.

It follows that the judgment of the District Court must be reversed, and a new trial ordered.