## BALTIMORE & O. R. CO. v. GOODMAN.

(Circuit Court of Appeals, Sixth Circuit. January 5, 1926.)

No. 4421.

1. **Railroads** ⊙➡346(5)—**Presumption decedent looked and listened for train rebuttable.**

There is a rebuttable presumption that decedent, struck by train at railroad crossing, both looked and listened for it.

2. **Railroads** ⊙➡327(8)—**Reasonable care required of truck driver.**

Driver of truck, approaching railroad crossing, was required to exercise for his own safety degree of care that a reasonably prudent person ordinarily would exercise in like circumstances, which required him to look and listen, when he could do so effectively.

3. **Railroads** ⊙➡350(22)—**Truck driver's negligence at obscured crossing held for jury.**

In action for death of driver of truck, struck by train traveling 60 miles an hour at obscured crossing, whether decedent was negligent *held* for jury.

**4. Railroads ⬤➾314—Operatives, in exercising ordinary care, required to consider obstructions off right of way.**

Duty of train operatives to exercise ordinary care to avoid injuring persons about to use railroad crossing requires consideration of obstructions off right of way that render crossing more dangerous than it otherwise would be.

In Error to the District Court of the United States, for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action by Dora Goodman, as administratrix of the estate of Nathan Goodman, deceased, against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant, brings error. Affirmed.

Marshall & Harlan, of Dayton, Ohio, for plaintiff in error.

Mattern, Brumbaugh & Mattern, and I. L. Jacobson, all of Dayton, Ohio, for defendant in error.

. Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. This is an action for damages for the death of Nathan Goodman resulting from the collision of a truck with a railroad train at a grade crossing in an unincorporated village in Montgomery county, Ohio. The collision occurred in the daytime. The truck was moving eastwardly on the public highway and the train was running in a southwesterly direction. Plaintiff's evidence tended to show that deceased reduced the speed of the truck, when about 40 feet from the crossing, from 10 or 12 miles an hour to 5 or 6 miles at which rate he was moving at the time of the collision; that the view of the tracks north of the crossing, as one approached it from the west, was obscured by buildings and other obstructions; that there was a tool shed on the right of way 243 feet north of the crossing, and 24 feet from the west track there was a store which obstructed the line of vision to the north; that deceased could not have seen the approaching train until he was within 24 feet of the west rail of the west track, and even then could not have seen it beyond the tool shed; and according to calculations put in evidence he had practically no view to the north, from his position on the truck until the front of it was less than 20 feet from the west rail. There was a dispute in the evidence as to whether adequate signals of the train's approach to the cross-

ing were given. The court submitted to the jury the issues of negligence and contributory negligence and a verdict was returned in favor of plaintiff, upon which judgment was rendered.

[1] The main contention here is that the trial court erred in refusing to direct the jury to return a verdict for defendant. It is not denied that the train was running at the rate of about 60 miles an hour, and Goodman was moving, immediately before the collision, at the rate of 5 or 6 miles an hour; consequently, when Goodman was 18 feet west of the track the engineer was approximately 216 feet north of the crossing, each in view of the other. The engineer said he was maintaining a lookout the width of the right of way, but did not see the truck until the moment of collision. It was not shown that Goodman looked or listened for the train, but there is a rebuttable presumption that he did both. Beckham v. Hines, Agent (6 C. C. A.) 279 F. 241. Plaintiff accounts for the engineer's failure to see the truck when it emerged from behind the store on the theory that the tool house obstructed his line of vision, which shows, as she contends, that the train was running faster than 60 miles an hour. That may or may not be true, or it may be that there was a momentary diversion of attention, as a glance in another direction would have sufficed to prevent effective action, and perhaps discovery, in the brief time that elapsed before the two vehicles came in contact at the crossing—as to Goodman, for example, the looking to the south before looking north. It is suggested, but not argued, that there was no proof of negligence on the part of defendant. We do not think it necessary to discuss that question, since what has been said of the evidence as to the crossing signals sufficiently disposes of it.

[2] It is, of course, true that Goodman was required to exercise, for his own safety, the degree of care that a reasonably prudent person ordinarily would exercise in the same or like circumstances, which included "the use of his faculties of sight and hearing." Flannelly v. D. & H. Co., 225 U. S. 597, 32 S. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154. This imposed on him the duty of looking and listening when he could do so effectively. Schofield v. C., M. & St. P. Ry. Co., 114 U. S. 615, 5 S. Ct. 1125, 29 L. Ed. 224; Philadelphia & R. Ry. Co. v. LeBarr (C. C. A.). 265 F. 129. Hence it is said that, as the evidence shows he could have seen the train when within 16 or 18 feet of the track

—whether he did or did not is immaterial—he was guilty of negligence as a matter of law, for, if he did not, he failed to look, or, if he looked, failed to stop before going on the crossing, and in either circumstance it was the duty of the court to direct the jury to return a verdict for defendant.

[3] The cases cited by defendant, among which are Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542, and Railroad Co. v. Freeman, 174 U. S. 379, 19 S. Ct. 763, 43 L. Ed. 1014, were decided on the particular facts under consideration, and are not in contravention of the general rule announced in the Flannelly Case, supra. N. Y. Cent. & H. R. R. Co. v. Maidment, 168 F. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794, cited as especially applicable, does not establish a standard of care for the driver of an automobile different from that required of the driver of horses, but recognizes, and rightly so, that the circumstances under which the former approaches a crossing are more favorable to the discovery of trains and to the stopping of his vehicle than those with which the latter must deal. That decision and others, including Bradley v. Mo. Pac. R. Co. (C. C. A.) 288 F. 484, apply the rule more rigidly against the user of the highway than this court has been willing to do. We prefer to adhere to the interpretation of Lake Erie & W. R. Co. v. Schneider, 257 F. 675, 168 C. C. A. 625 (6 C. C. A.) and Beckham v. Hines, 279 F. 241 (6 C. C. A.) The seemingly less liberal cases of Kallmerten v. Cowen, 111 F. (6 C. C. A.) 297, 49 C. C. A. 346, Shatto v. Erie R. Co., 121 F. 678, 59 C. C. A. 1, and Fluckey et al. v. Southern Ry. Co., 242 F. 468, 155 C. C. A. 244, must be regarded as dealing with particular states of fact, and not as conflicting with the later opinions of the court, which allow—if not in terms, in the adaptation of the general rule—"for modifying circumstances, or for accidental diversion of the attention, to which the most prudent and careful are sometimes subject." Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403. Under these decisions we cannot hold that Goodman was guilty of negligence as a matter of law.

[4] The other question assigned and argued relates to the refusal to charge the jury as requested, viz.: That the operatives of the train were not required, in approaching the crossing, to take into consideration obstructions not on the right of way of defendant. It would be too lax a rule to permit a railway company to ignore the dangers of a crossing caused by obstructions not on the property of the company, and to operate its trains as if the crossing were free of the extraordinary dangers incident to its location. The duty of those operating a train to exercise ordinary care to avoid injuring persons about to use a railroad crossing clearly requires the taking into consideration of obstructions off the right of way that render the crossing more dangerous than it otherwise would be. It was not, therefore, error to refuse this charge.

Judgment affirmed.