BALTIMORE & O. R. CO. v. REEVES.

(Circuit Court of Appeals, Sixth Circuit. January 18, 1926.)

No. 4120.

1. **Railroads** ⚖350(26)—**Automobile driver's contributory negligence held for jury.**

In action by automobile driver for injuries from crossing collision, evidence as to poor visibility by reason of rain and sleet, that road leading to crossing was rough and slippery, and driver's ignorance of surroundings, *held* to present a question for the jury as to whether driver was guilty of contributory negligence.

2. **Trial** ⚖330(2)—**Though evidence warranted finding for plaintiff on one ground, verdict cannot stand, if error committed in submission of any of several other grounds.**

In action by automobile driver for injuries from crossing collision, though evidence warranted finding for plaintiff on issue of failure to give statutory signals, where other grounds of negligence were submitted, verdict cannot stand, if there is any substantial error in submission of any of such other grounds.

3. **Railroads** ⚖316(2)—**Negligence cannot be based alone on high speed at unobstructed country crossing.**

In ordinary unobstructed country crossing, railroad's negligence cannot be based alone on customary, though high, speed, accompanied by statutory crossing warning, and periods of darkness, storm, or other conditions of poor visibility do not affect this rule of liability.

4. **Railroads** ⚖350(11)—**Submission of question of negligence based on speed held error.**

In action by automobile driver for injuries from crossing collision, submission of theory of railroad's negligence in not having train under proper control *held* error, where train was running at customary speed, and crossing was an ordinary unobstructed country crossing.

5. **Railroads** ⚖337(2)—**Failure to keep crossing approaches in repair held not basis of recovery for collision with automobile.**

Failure of railroad to keep highway leading to crossing in good repair, as required by Gen. Code Ohio, § 8843, even if due to railroad's de-

fault, did not constitute an independent affirmative basis of recovery for injury to automobile driver from collision at such crossing.

**6. Railroads ☞350(32)—Whether failure to erect statutory signs at crossing contributed to injury held for jury.**

Whether Gen. Code Ohio, § 8852, relating to crossing signs, was complied with by railroad, and, if not, whether such failure substantially contributed to disarming of vigilance of automobile driver, injured at crossing, *held* questions for jury.

**7. Railroads ☞350(7)—Submission of theory of duty to give signals, in addition to statutory signals, held error.**

In action by automobile driver for injuries from collision occurring at an ordinary unobstructed country crossing, submission of theory that, even if statutory signals were given, there might be common-law duty to give additional signals, was error.

**8. Railroads ☞350(33)—Evidence held not to warrant submission of last clear chance doctrine.**

Evidence that engineer was watching automobile, which was approaching crossing slowly and carefully, that view between driver and engineer was unobstructed, and that not until automobile did not stop did engineer have any reason to suppose there was danger, *held* not to warrant submission of last clear chance doctrine.

**9. Trial ☞248—Charge of federal trial judge, presenting applicable rules of law, should be concrete and helpful, rather than abstract and general.**

The duty of a federal trial judge to aid jury in application of rule of law to facts of case is most important, and charge presenting such rules of law should not be given to jury as mere generalities, containing only abstractions, but should be given in a concrete and helpful way.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; Paul Jones, Judge.

Action by Alfred A. Reeves against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

J. S. Rhinefort, of Toledo, Ohio (Morison R. Waite, of Cincinnati, Ohio, and Tyler, Northup, McMahon & Smith, of Toledo, Ohio, on the brief), for plaintiff in error.

Gustavus Ohlinger, of Toledo, Ohio (John L. Cable, of Lima, Ohio, on the brief), for defendant in error.

Before DENISON, and MACK, Circuit Judges, and ROSS, District Judge.

DENISON, Circuit Judge. Reeves recovered verdict against the railroad for injuries received in a highway crossing collision.

He was driving south in an automobile (Ford coupé), closed except that the window upon his left was open. The highway was paved. For some distance the railroad had been east of and parallel to and about 1,000 feet away, then the highway made a slight curve toward the railroad, and for 1,000 feet before reaching the crossing was straight; the railroad and highway converging at an angle of about 30 degrees. On the crossing the automobile was struck by a train, also going south. As in every such case, controlling questions are whether there was any substantial evidence of defendant's negligence, and whether there was any room for doubt about plaintiff's contributory negligence.

[1] Without reciting details, it is entirely clear that the plaintiff was guilty of such failure to observe ordinary care as to approaching the crossing that he should be barred from recovery, unless that failure was excused by the composite effect of the three circumstances to be mentioned. These are, first, there were mist and rain and sleet, so that the visibility was poor; second, the pavement ended 150 feet from the crossing, and the intervening roadway was rough and rutty, as well as wet and slippery, so that Reeves had his engine in low gear, with the accompanying noise, and had his attention concentrated upon the road just in front of him; third, he was a stranger to the road, and did not know and did not observe that he was approaching a railroad crossing, and there was room for the jury to find that, consistently with due care on his part, he did not become obliged to know. It was within the right of the jury to find that there was no contributory negligence.

As to the statutory whistle and bell signals: There is very positive testimony that these signals were given, and the evidence to the contrary is of a negative character; but, again without discussing the details, we conclude that those witnesses who did not hear the signals had opportunities enough for hearing, and were likely enough to have heard and to have remembered them if they had been given, to make a substantial basis for a finding in favor of the plaintiff upon this issue.

[2] This conclusion does not end the matter, for other grounds of negligence than the failure to give whistle and bell signals were alleged, and were submitted to the jury, and the verdict may have rested upon one or the other of those grounds, even though the jury was convinced that there was no failure of duty as to the statutory signals; hence, if there was

substantial error as to submitting any of the other theories, the verdict cannot stand. This is the established federal rule.

[3,4] The petition alleged that there was negligence in not having the train under proper control, and this theory of liability was submitted to the jury. Under the facts of this case, this is nothing but an allegation of excessive speed, and we find nothing tending to support a conclusion of negligence in this. The train was running at 50 to 60 miles an hour; such speed is customary, and not in itself improper; the crossing was in the open country, and the view unobstructed. No theory of negligence in the matter of speed and train control approaching a grade crossing in the country can be intelligently comprehended, unless by comparison with the supposed alternative, which would have been not open to complaint. Whatever reason there may sometimes be for finding that particularly dangerous crossings may require special and additional warnings, if crossed at high speed, to say that in ordinary, unobstructed, country crossings a defendant's negligence may be based alone upon customary, though high, speed, accompanied by the statutory crossing warnings, is to impose a standard of train control wholly impracticable and inconsistent with the respective rights of the railroad and the highway traveler.

Nor can this rule be changed by periods of darkness, storm, or other conditions of poor visibility. When the statutory signals have been given, we know of no principle which would justify taking the judgment of a jury as to whether an engineer should have run at less than customary speed approaching any ordinary, unobstructed, country crossing. This theory of negligence should not have been submitted to the jury in this case. This conclusion is in no wise inconsistent with Erie v. Weinstein (C. C. A. 6) 166 F. 271, 274, 92 C. C. A. 189. This crossing is of the same class as that considered by us in Murphy v. Pa. Ry., 1 F.(2d) 929.

[5] Another ground of negligence alleged was that the railroad failed to keep in good repair the approaches to its tracks at this intersection. Section 8843 of the General Code of Ohio provides: "Companies operating a railroad in this state, shall build and keep in repair good and sufficient crossings over or approaches to such railway, its tracks, side-tracks and switches at all points where any public highway, street, lane, avenue, alley, road or pike is intersected by such railway, its tracks, side tracks or switches; also good and sufficient sidewalks on both sides of streets intersected by their roads, the full width of the right of way owned, claimed or occupied by them. Crossings and approaches outside of municipal corporations, the township trustees shall have power to fix and determine as to their kind and extent, and the time and manner of constructing them."

At this point about 125 feet of the highway before coming to the tracks were within the limits of the railroad right of way (30 feet of roadway, 50 feet of bridge, 40 feet of road), and it was with the roughness of this part of the highway that Reeves' attention was engrossed during the last few seconds, when he otherwise should have observed the existence of the crossing and the coming of the train. There is a controversy as to whether "approaches," in this statute, means the whole distance from the tracks to the outer boundary of the right of way, or refers only to the immediate proximity of the rail, so as to permit a fairly smooth crossing over it. We do not find that in this respect the statute has ever been construed by the Ohio courts; nor does the record show the practical construction which would arise from common action of railroad and township authorities in maintaining such portions of the highway. Upon another trial there may be aid from such interpretation; but we do not now see its materiality. As later pointed out, this highway imperfection takes effect in tending to excuse what might otherwise be plaintiff's negligence, and for that purpose it does not matter where the duty of repair rested.

We are satisfied that this highway defect, even if due to defendant's default, cannot constitute an independent, affirmative basis of recovery. The holdings that breach of a statutory duty is negligence, or evidence of it, rest largely on the theory that the breach is a penal offense, and here there is no penalty; but, further, there is no causal relation between breach and injury. Obviously, if the vehicle were injured by the road defects, or were thereby caused to slide and fall into danger, or were thereby caught and held in danger from the train, the relation of cause and effect would be clear, just as in the recent case of Orton v. Railroad (C. C. A.) 7 F.(2d) 36, damages caused to highway travelers by delay from a too long continued obstruction would have been the proximate result of the obstruction; but, as affecting questions of negligence between the railroad and the crossing driver, the statute was fully justified by the necessity of leaving the traveler free to give his attention to keeping a careful lookout, and its force is exhausted by

satisfying that requirement. In other words, a bad highway condition naturally leads to producing what would otherwise be contributory negligence. It has no direct tendency to lead to a crossing collision; it only surrounds the traveler with a condition, save for which he might not have been injured. The Lang Case, 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729.

[6] Another alleged ground of negligence submitted to the jury upon which recovery may rest is the supposed violation of section 8852, which says: "At all points where its road crosses a public road, at a sufficient elevation from such public road to admit of the free passage of vehicles of every kind, each company shall erect a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive. A company which neglects or refuses to comply with this provision shall be liable in damages for all injuries which occur to persons or property from such neglect or refusal."

This statute is an old one; it contemplated that the sign referred to would extend out over the highway, so that vehicles would pass under it. It was particularly appropriate to the days of horse-vehicle, slow-moving travel, and is in its language very inappropriate for present conditions. At the same time, it must be interpreted and applied to present conditions as well as may be, according to its spirit. Its spirit requires a sign which shall give fair warning to reasonably attentive drivers at some distance away that they are about to cross a railroad. A literal, if not substantial, compliance with the statute might be sufficiently effective, if accompanied by the now common additional warnings, erected either by the railroad or by highway authorities, upon the right side of and close to the pavement, some 300 feet from the track; but the record does not show any such warning sign in this case. The only sign which did exist is said to be the old-time customary one. It consisted of two cross-arms, each midway between the vertical and horizontal, each about 10 feet long, and attached at their intersecting center to a telegraph pole upon one side of the highway, 10 feet from the ground and a few feet from the track. It projected about 5 or 6 feet toward the highway, and, as Reeves was approaching, was upon his left side and beyond the railroad track, and well outside of the regular traveled portion of the highway.

We think it was open for the jury to find

that there was no such sign as the statute requires, when properly interpreted and applied to existing common conditions, of which we take notice. Yet is there proximate relation between this default and the collision injury, or does it affect only the question of contributory negligence? It is quite clear that the absence of the required audible (whistle and bell) or ocular (crossing signs) warnings does not directly cause the collision; yet, as to the lack of notice to the ear, it is well settled that a finding of damage liability may rest on that alone. We do not find satisfactory discussion of the rule of proximate cause in this connection. Certainly there is high negligence, per se, in violation of the Safety Appliance Act (Comp. St. § 8605 et seq.), yet the strict rule of proximate cause is there enforced. Equally surely, the lack of whistle has no consequence, if the highway traveler is stone deaf, or actually sees the train; nor does the lack of crossing sign bring damage, if the fog is too dense to see it, or if the traveler then knows the crossing is there. The true theory may be that in running such an uncontrollable body across a highway there is inherent negligence, which is only excused if the statutory warnings are given. At any rate, we have in this sign statute a distinct call for the cause and effect relation. We think it refers to injuries which would not have occurred, if the statutory sign had existed; and it will be for the jury in this case to say whether there was sign-default and, if so, whether it substantially contributed to a disarming of the driver's vigilance, without which disarming the collision would not have occurred.

There is room to say that the causal relation may exist between lack of crossing sign and collision, and yet be absent between bad-order highway approach and collision. The former duty is imposed with the primary purpose of avoiding collisions; the latter, with the main purpose of making easy going across the rails.

[7] The court also submitted the theory that, even if statutory signals were given, there might be a common-law duty to give some more. We find no basis for this. The question is the same as with reference to speed. Coming to this ordinary, open crossing, it would be merely arbitrary for the jury to find a duty to give more warning than the statute required. No standard of reasonable care can demand that additional whistles be blown, merely because a traveler, in no apparent danger, is approaching the crossing.

[8] The court also submitted the theory of

"last clear chance." Defendant invited this, and could not complain of its mention; but for guidance in the new trial we should say that the undisputed facts show nothing to support this theory. The engineer was watching the auto approaching the crossing slowly and carefully (plaintiff says at 8 miles per hour), the view between the two was unobstructed, the railroad was in plain sight of the auto driver, and not until the auto came close to the track and did not stop did the engineer have any reason to suppose there was danger. Then he blew an alarm, but it was too late.

[9] The record leads us also to say that the power—indeed, the duty—of the federal trial judge to aid the jury in the application of the rule of law to the facts of the case is most important. A charge containing only abstractions is not as helpful as if it were more concrete. This case may serve as an illustration. It would not seem difficult to sum up impartially the proof tending to deny and tending to show that the whistle and bell sounded, and submit that issue simply and clearly to the jury. So with the issues of insufficient crossing sign and of contributory negligence. Certain standards of due care, as applied to particular circumstances, have crystalized into rules of law, and these should be given to the jury, not as mere generalities, but in a helpful way.

The judgment is reversed, and the case remanded for a new trial.

NOTE.—The case was decided before the death of the late Judge ROSS, and he had participated in the preparation of some parts of the opinion.