## PENNSYLVANIA R. CO. v. STEGAMAN.

Circuit Court of Appeals, Sixth Circuit. October 14, 1927.

No. 4639.

**1. Negligence ⬤⟲92—Bus driver's neglect to look for train held not sole proximate cause of collision, but no more than contributory negligence not chargeable to passenger.**

Assuming negligence of railroad, failure of bus driver to observe statutory duty to ascertain whether train was coming *held* not proximate cause of collision injuring passenger; such failure being no more than contributory negligence, for which passengers in bus were not responsible.

**2. Appeal and error ⬤⟲1068(3)—Error, if any, in submitting particular issues of negligence held to require reversal, notwithstanding probability that jury would in any event have found defendant negligent in another respect.**

Error in submitting issues whether railroad was negligent in running train at excessive speed, or in failing to give warning signals in addition to those required by statute, *held* to require reversal, even though it was probable that the jury would in any event have found that railroad was negligent in failing to give statutory signals.

**3. Railroads ⬤⟲316(2)—Legislature's failure to regulate speed of trains in country impliedly warrants speed deemed safe.**

Failure of General Assembly to regulate speed of trains in the country impliedly warrants railroads in running their trains in the country at such rate of speed as those in charge may deem safe.

**4. Railroads ⬤⟲316(3)—If crossing signals are given, ordinary speed at crossing notwithstanding fog furnishes no independent basis for conclusion of negligence (Gen. Code Ohio, § 8853).**

Where crossing signals required by Gen. Code Ohio, § 8853, are given, the maintenance of ordinary speed over crossings during fog gives no independent basis for a conclusion that railroad is negligent.

**5. Railroads ⬤⟲312(15)—Fog held insufficient to warrant finding of duty to repeat crossing signal given as required by statute (Gen. Code Ohio, § 8853).**

The mere existence of a fog, obscuring view of train approaching crossing and striking a bus and injuring a passenger therein, *held* insufficient to justify jury in finding that duty existed to repeat crossing signal, if given as required by Gen. Code Ohio, § 8853.

**6. Trial** ⬦⟹349(3)—**Judge may often submit special issue on his own motion, with benefit to public.**

The trial judge may often, on his own motion, submit a special issue, with benefit to the public interest.

In Error to the District ·Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Action by Anthone Stegaman against the ·Pennsylvania Railroad Company for the death of his minor son. Judgment for plaintiff, and defendant brings error. Reversed.

George R. Effler, of Toledo, Ohio (Fraser, Hiett, Wall & Effler, of Toledo, Ohio, Wheeler & Bentley, of Lima, Ohio, on the brief), for plaintiff in error.

Geo. W. Ritter, of Toledo, Ohio, and Kerns Wright, of Van Wert, Ohio (Conn, Hoke & Wright, of Van Wert, Ohio, and Ritter & Brimback, of Toledo, Ohio, on the brief), for defendant in error.

Before DENISON and MOORMAN, Circuit Judges, and HOUGH, District Judge.

DENISON, Circuit Judge. The defendant in error recovered a judgment on account of the death of his intestate, his minor son, under the circumstances described in our opinion in this case upon a former appeal (6 F.[2d] 873) and involved in the Overholt Cases (C. C. A.) 4 F.(2d) 1021.

Upon the trial there was substantial evidence that the statutory warnings by whistle and bell were not given. Hence there was a case for the jury upon the issue of the railroad's negligence.

[1, 2] We are unable to see that, assuming there was negligence by the railroad, the conduct of the bus driver in failing to observe his statutory duty to ascertain whether a train was coming, if he did fail to observe it, could be considered as the sole proximate cause of the disaster, or as more than that contributory negligence, for which his passengers did not carry responsibility. See Kline v. Pa. R. R. Co., C. C. A. 6, 9 F.(2d) 290.

In addition to the above-stated ground of negligence, the trial judge submitted to the jury two additional grounds: The second, that the train was running at a rate of speed higher than due care under the circumstances permitted; the third, that warning signals or precautions, in addition to those required by the statute (Gen. Code Ohio, § 8853), should have been given or taken by the railroad. It is more or less probable, perhaps very likely, that the jury would have found negligence upon the first ground stated, if

neither of the others had been submitted; but they might not. Their conclusion may be based upon either the second or the third ground; and, if there was error in submitting either of these, there must be a reversal. We are compelled to find that there was error in both respects.

The cases in which the speed of the train, assuming always that it was a usual and customary speed and not forbidden by any ordinance, has been considered as contributing to or constituting the railroad's initial negligence, fall into two main classes. The first is where there are obstructions such as to be specific obstacles to the free view of each other by the converging train crew and highway traveler, or where the highway has an unusual amount of travel, ·and thus where there is, for one reason or another, an unusually· dangerous crossing, in the character of the danger or in the number exposed. Those instances of this class where the railroad has created the obstructions, stand upon special grounds. Excluding these instances, the remaining ones, involving permanent obstacles beyond the railroad's control, are not all easily reconcilable with each other; but they are not important here, and the principles applicable thereto as to speed are not intended to be foreclosed by this opinion. See B. & O. R. R. v. Goodman, C. C. A. 6, 10 F.(2d) 58. The other main class involves the ordinary country crossing, where the view of all concerned as they approach it is free and unobstructed, so that, in the daylight and ordinarily, each party in looking must see the other. It is this second class of crossing which is here involved and which we recently considered in B. & O. R. R. Co. v. Reeves (C. C. A.) 10 F.(2d) 329, decided since the trial now under review. After further consideration, in view of the facts and arguments in this case, we see no occasion to recede from the position announced in the Reeves Case as to such a crossing, and under ordinary conditions.

[3] We again approve and adopt, as we there did, the doctrine of Railway Co. v. Kistler, 66 Ohio St. 326, 64 N. E. 130, where it was said: "As the General Assembly has the power to reasonably regulate the speed of trains, not only in cities, but also in the country, and has failed to exercise that power, as to speed in the country, such failure is an implied warranty to railroad companies to run their trains in the open country at such rate of speed as those in charge of the same may deem safe to the transportation of passengers and property, such safety, however, being the paramount consideration. As there are road

crossings in the country every few miles, it is inconsistent with proper speed of transportation that trains should slack up for such crossings. Safety is secured to persons at such crossings by the observance of the statutory signals, and, such signals being given, the train is not limited as to speed."

[4] It was further held that, although a high rate of speed, when taken in connection with "other facts and circumstances," might become an element in constituting negligence, yet no such other facts were pleaded. Upon this point we find no distinction between the facts there pleaded and those here proved, with the single exception that here there was a heavy fog. As to the class of crossings now involved, this cannot change the rule. The impairing of visibility by fog or snow is a common condition. Highway crossings in the country very commonly come once a mile. If it were in the discretion of a jury to say that it is negligence to maintain regular and ordinary speed, within any reasonable limits, through the open country in a fog, it would be necessary, under such a condition, to abandon all time schedules.[1] If such a restriction is reasonable and is in the public interest, it should be made by the Legislature. Of course, in holding, as we do, that the maintenance of ordinary speed over such crossings and in a fog gives no independent basis for a conclusion of railroad negligence, we have no reference to the effect of a fog upon the question of contributory negligence by the traveler, as either lessening or increasing the caution otherwise required of him.

Nor in the facts in this case, considered in connection with the speed maintained and all the other circumstances, do we find anything to support a conclusion that reasonable care might have dictated the giving of signals or the taking of precautions beyond those required by the statute. It is somewhat impressive to say that under unusual conditions more than the usually ordinary care may be necessary by the engineer to warn highway travelers, and so to say that "further reasonable precautions" should be taken while running in a fog; but such abstract terms only confuse accurate thought. No court or jury can rightly base a conclusion of liability on this proposition, unless it can say *what precaution* was omitted which should have been taken. Under the facts of this case (assum-

ing that all statutory warnings were given), that omitted step can only have been another whistle, in addition to the requirement of the statute which calls for the blowing of the whistle not less than 80 nor more than 100 rods before coming to the crossing and for the continued ringing of the engine bell, but does not specify gates or a watchman or a crossing bell at such a crossing as this. At the speed at which this train was running, as variously estimated, the statutory whistle would have been given not less than about 20 seconds or more than about 45 seconds from the crossing. Upon plaintiff's proofs—40 to 50 miles per hour—the time interval would be from 18 to 28 seconds. This seemingly must be a commonly effective warning, to all exercising due care. The customary two long and two short blasts occupy several seconds. In addition, it is, for this specific discussion, to be assumed that the bell was constantly ringing. Another whistle, to be of any substantial warning service, would have had to be within 10 to 15 seconds after the first one—for a warning too late is useless.

[5] Such a whistle warning, 80 to 100 rods away, followed by this constant ringing of the bell, has been fixed by the Legislature as what should be required for the ordinary crossing; and, if reasonable care could require further warning, it is because of some special circumstance. Here there was none, excepting the fog. That alone we think not sufficient to justify a jury in finding a duty to repeat the whistle within some 15 seconds, when the Legislature has prescribed the ringing of the bell to cover this interval.[2] As we stated in the Reeves Case, there can be no intelligent consideration of that maximum conduct which yet may not reach up to the critical line so as to be due care without contrasting with it the conception of that minimum above the line which surely would be due care and thus may always be thought necessary. The contrasting rule here would

[1] The logical result of the contrary view is to hold that the jury has the right to condemn the engineer unless he runs so slowly as to be able to stop within the distance he can see ahead. This result was frankly accepted by the Alabama court, in Hines v. Beasley, 17 Ala. App. 636, 88 So. 31.

[2] The warning of a whistle depends upon its audibility. Conditions of visibility are unimportant. There is no evidence, nor can we take notice, that any fog, even if dense, will substantially interfere with hearing the ordinary locomotive whistle at a distance of 80 rods. On the contrary, it is familiar, in admiralty cases, that whistles are usually heard through fog at distances much greater than this—though they may seem further away than they are and may not truly indicate their direction. Doubtless the present statutory regulations were made and the proper time and distance intervals calculated with reference to the speed of horses in highway travel. A general revision may now be appropriate, but courts and juries cannot make it.

be that every crossing whistle, while the fog lasted, must be repeated shortly—on the fast trains, immediately. The existence of a dense fog either always should, or never should, of itself, put this duty on the railroad (at ordinary country crossings). Where the question is as to the specially dangerous character of the crossing, there may be room for a jury to exercise its judgment and discretion in fixing that character; not so, we think, as to a question of general duty under a familiar condition frequently imposed by nature, and necessarily within the contemplation of the Legislature when it fixed the conditions upon which a railroad should be allowed to cross a highway. We find no authority dictating a contrary conclusion. Doubtless there are expressions, even among our own opinions, indicating that the jury may find the duty to give the second whistle; but that has been said, we think, only in cases which we have described as of the first main class, like the Goodman Case, supra, and they are sufficiently distinguished by this classification. In Continental Improv. Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403, the view of the crossing was not only obstructed but the giving of signals beyond the statutory specification was not involved. It is of course true that "the speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell"; but this can have no application to such circumstances as we have here, where the complaint, if any, must be that the statutory whistle was too far away. Our own decision in Erie Co. v. Weinstein (C. C. A.) 166 F. 271, is relied upon in support of the charge given. To furnish such support it must be construed as approving a charge that upon an ordinary country crossing the mere existence of the impaired visibility caused by a snowstorm is a sufficient basis for finding a duty to repeat the once given crossing whistle. We do not think the opinion should be so construed. The charge given in the trial court and approved in that opinion was one of those generalities which are proper enough if the facts exist to which they are rightly applicable, but which, as said of another rule by the Supreme Court of Ohio in Drown v. Traction Co., 76 Ohio St. 234, at page 249, 81 N. E. 326, 329 (10 L. R. A. [N. S.] 421, 118 Am. St. Rep. 844), "should not be given as a hit or miss rule in every case involving negligence. It should be given with discrimination." The facts involved in the Weinstein Case are not very fully stated. It does appear that the crossing was at the edge of—

perhaps in—a city, and it may well have been considered an especially dangerous one under ordinary conditions rather than merely on account of a snowstorm. Every one of the cases cited to support the opinion involved a crossing particularly dangerous in a general and continuing way, either because of permanent obstacles to sound and hearing or because of customary heavy traffic, and we think the opinion should be considered as referring only to that kind of a crossing.[3] It may well be noted that an adverse high wind is a greater bar to the effectiveness of a whistle warning than any fog can be; but would such a wind of itself justify a finding of duty to repeat the whistle? It would seem not.

We find no authoritative or persuasive case in which, as to an open and free country crossing, with no obstructions to the view either permanently existing or caused by the railroad, with the train running at ordinary and normally proper speed, and with no interference with vision except a dense fog, it has been held that there is lawful basis for any reasonable person to conclude that due care required a repetition of the statutory whistle within a few seconds. The cases cited for plaintiff have been examined. They all involve either no signals at all, or the presence of other obstacles to sight and hearing.

These conclusions make it necessary that the judgment should be reversed, and the record remanded for a new trial.

[6] We may add that the case would have been a very appropriate one for taking the opinion of the jury by a special question as to the specific negligence which they found to exist. The trial judge may often, on his own motion, submit such a question, with benefit to the public interest. If the jury had thus indicated a finding that the statutory signals were not given, this reversal—very unfortunate on account of the history of the case—would have been unnecessary. As it is, if the case is tried again upon substantially the same record, the issue will be very simple. If the statutory signals were not given, there is no defense; if they were, there can be no recovery.

---

[3] The record in this court in the Weinstein Case shows that the negligence charged was the failure to give any warning, and the failure to have guard gates or a watchman at a crossing which was over the main street of the city, a much traveled highway, and at a point where the view was obstructed by permanent buildings, as well as by the snowstorm. The only "further precaution" mentioned in the briefs is the watchman or gate.